PATRICK GRACE *vs.* FRANCIS M'ELROY.

The Rev. Sts. c. 50, § 12, authorize one who has lost and voluntarily paid money to the winner of a wager on a dog-fight, to recover it back in an action for money had and received.

CONTRACT for money had and received. The plaintiff's bill of particulars was as follows : " To cash received by you from me, the same having been won on an illegal wager, to wit : upon the result of a dog-fight, $40." In the superior court,

*Morton*, J., ruled that the action could not be maintained, and the jury accordingly returned a verdict for the defendant. The plaintiff alleged exceptions.

*S. H. Randall*, for the plaintiff.

*A. W. Boardman*, for the defendant.

DEWEY, J. Under the principles of the common law, a party losing money by a wager could not recover back the same after it had been paid to the winner. If the action can be maintained therefor, it is solely under the provisions of Rev. Sts. c. 50, § 12, providing that " if any person shall, by playing at cards, dice, or other game, or by betting on the sides or hands of such as are gaming, lose to any person so playing or betting, any sum of money, or any goods whatever, and shall pay or deliver the same, or any part thereof, to the winner, the person so losing and paying or delivering the same may sue for and recover such money in an action for money had and received to the use of the plaintiff, and such goods in an action of trover; or he may bring a special action on the case therefor," &c.

The single inquiry is, therefore, does this statute authorize the plaintiff to recover back money lost and voluntarily paid to the defendant on a wager on a dog-fight? It is said on the part of the defendant that it does not embrace the present case; but that the gaming there described is that species of gaming practised with implements used for that purpose, as cards, dice, and the like. If the question of the proper construction of the words found in this statute was entirely a new one, it certainly might be very plausibly urged that the games to which it had reference were of the character alleged by the defendant's counsel; and that, upon the principle of *noscitur a sociis*, wagers on horse-races, dog-fights, and this class of cases, were not included in the statute.

But a recurrence to the earlier English statutes as to gaming, and to the various judicial decisions thereon, will lead to the contrary result; and tend to establish, as the proper construction of the Rev. Sts. c. 50, § 12, that it is a broad provision for the recovery of money lost at gaming, under any mode of betting that may be called gaming, or money lost at games.

In the early statute of 16 Car. 2, *c.* 7, § 2, punishing fraudu-
lent gaming, "cocke-fightings, horse-races, dog-matches and foot-
races" are among the enumerated cases embraced under the
term gaming.

By *St.* 9 Anne, *c.* 14, § 2, (printed as *c.* 19, in 9 Statutes of
the Realm, p. 476,) a statute using much the same language as
ours, being this: "any person or persons whatsoever, who shall
at any time or sitting, by playing at cards, dice, tables or other
game or games whatsoever or by betting on the sides or hands
of such as do play at any of the games aforesaid lose" &c., "the
person or persons so losing and paying or delivering the same
shall be at liberty within three months then next to sue for and
recover the money or goods so lost and paid or delivered or
any part thereof from the respective winner and winners
thereof," &c.

In *Blaxton* v. *Pye*, 2 Wils. 309, it was held that a wager
upon a horse-race is gaming within the *St.* 9 Anne, *c.* 14, and
the court said, "they ought to extend the *St.* of 9 Anne, to pre-
vent excessive betting upon all sports as well as games, and
that although horse-racing is not mentioned in that statute, yet
it is within the general words 'other game or games.'" It had
previously been thus declared in the case of *Goodburn* v. *Mar-
ley*, 2 Stra. 1159. See *Brogden* v. *Marriott*, 2 Scott, 712. In
*Lynall* v. *Longbothom*, 2 Wils. 36, it was held, that a foot-race
was a game within the *St.* of 9 Anne, *c.* 14. The position
taken was that, for a definition of "other game or games," the
court might properly refer to gaming as described in the *St.* of
16 Car. 2, *c.* 7. In *The King* v. *Howel*, 3 Keble, 465, 510,
the keeping a cockpit was held an unlawful game. In *Squires*
v. *Whisken*, 3 Camp. 140, cock-fighting was said to fall within
the description of gaming. In *Egerton* v. *Furzeman*, 1 C. &
P. 613, in an action to recover money deposited with a stake-
holder, a wager on a dog-fight was declared to be an illegal
wager.

The statute in question is a remedial statute, and is to be
liberally construed in furtherance of its apparent object. The
evil to be remedied was certainly as great in the case of one

who had lost his money on a wager on a dog-fight, as he who had lost his money by betting on a game at cards or dice. We think that it was the general purpose to apply the statute to gaming in all its forms recognized in the earlier statutes, as well as those which were particularly named therein.

Our present statute had its origin in the provincial statute of 1742. Anc. Chart. *c.* 218. This was reënacted by *St.* 1785, *c.* 58, § 2, and again in Rev. Sts. *c.* 50, § 12.

We may reasonably infer that the *St.* 1742 in using the words "other games" had reference to those well known and recognized in the earlier English statutes to which we have referred. The continuation of substantially the same language in the reënacting statutes, leads us to suppose that the word " game " was also used there in the same sense. The statute of 9 Anne, *c.* 14, had long since been declared to be a remedial statute, and one to be liberally construed. *Turner* v. *Warren*, 2 Stra. 1079. *Brandon* v. *Pate*, 2 H. Bl. 308.

Looking at the purposes of our statute and the mischief intended to be remedied by it, and the similarity in its provisions to the statute of 9 Anne, *c.* 14, the court are of opinion that the Rev. Sts. *c.* 50, § 12, do authorize a party to recover back, in an action for money had and received, money lost and voluntarily paid to the winner on a wager on a dog-fight.

*Exceptions sustained.*