STATE OF MINNESOTA *vs.* FRANK SHAW and another.

August 28, 1888.

Gaming—Construction of Statute. — A violation of section 294, Pen. Code, which prohibits gambling with cards, etc., is a misdemeanor, and is punishable under section 13.

Same—Risking Money on Contest of Chance.—The risking of money between two or more persons on a contest of chance of any kind, where one must be the loser and the other the gainer, is gambling.

Same—Betting on Horse Race.—For such purposes a horse race is a game, and betting thereon is punishable under section 296.

Same—Gambling Devices—Lists and Boards for Betting on Races.— The "boards and lists" described in the indictment, and alleged to be kept and used by defendants, and descriptive of horse races, and the times and places of such races, are not "gambling devices" within the intent and meaning of the statute. No additional element of chance is introduced thereby, and the determination of the alleged games is not affected by their use.

The defendants Frank Shaw and Harry Brannigan, being indicted in the district court for Ramsey county, interposed a general demurrer, which was overruled by *Kelly*, J., and thereupon the case was certified to this court, under Gen. St. 1878, *c.* 117, § 11.

*Moses E. Clapp,* Attorney General, and *J. J. Egan,* for the State.
*C. D. & Thos. D. O'Brien,* for defendants.

VANDERBURGH, J.  This appeal involves the construction of sections 294, 295, Pen. Code.  As the Code has abolished all common-law offences except as defined and made punishable thereby, (section 2,) the indictment must stand or fall by the interpretation to be given the sections named.

1. Chapter 9, tit. 10, Pen. Code, is substantially a transcript of corresponding sections in chapter 99, Gen. St. 1878, except that section 12 of the last chapter, expressly declaring gambling to be a misdemeanor, and fixing the penalty, is omitted.  But we are of the opinion that section 12 was omitted because the prohibited acts must, under section 6, Pen. Code, be classed as misdemeanors, and the legislature intended to leave the punishment therefor to be inflicted under section 13.  The prohibition makes the acts specified unlawful under the Criminal Code of this state, and, the offence not being expressly defined or made a felony, it must be intended to be made a misdemeanor under sections 3, 4, and 6.  There are many offences in the Code which are expressly "declared" to be misdemeanors, and where no penalty is provided, and the punishment is left to be regulated under section 13; but it would be too narrow a construction to hold that the latter section is limited to cases in which the offence is in terms "declared" to be a misdemeanor, if the prohibited act must fairly be construed to be such under section 6.

2. The principal question involved in this case is the construction to be placed upon the term "gambling devices," used in section 294 and section 295, and this question is common to all the counts in the indictment.  The first count charges that the defendants did, at the time and place named, "for gain and reward, gamble with gambling devices, to wit, boards and lists containing the names of horses which were to race on a given day, at a time and place then and there named."  The second count charges that the defendants, "for gain or reward, did unlawfully keep, maintain, and control divers gambling devices, designed to be used in gambling, to wit, boards and lists containing the names of horses which were to race on a given day within the United States, at a time and place then and there

named, but a more particular description of which said devices, names of horses, places and times of races, is to this grand jury unknown, which said gambling devices were then and there designed by said Shaw and Brannigan to be used in gambling in the manner following, to wit: Said Shaw and Brannigan would then and there place on said boards and lists the names of certain horses which were to race at different places within the United States on a day then and there named, and from said names of horses so placed divers persons, to this grand jury unknown, would then and there select three horses from said boards and lists, each of which were in different classes or races, and each of which were to be winning horses in each of their respective lists, and designated by the persons so selecting them as the winning combination; and said unknown persons so selecting said combination of three horses would then and there bet and wager large sums of money with said Shaw and Brannigan that said three horses would be the winning horses in their respective races; and in case each of said horses won in their respective races, then said unknown person or persons would become the owner of the money bet and wagered as aforesaid; and if either or all of said three horses so selected failed to win in their respective races, then said Shaw and Brannigan would become the owners of said money bet and wagered as aforesaid," etc. The third count charges that Shaw and Brannigan "did unlawfully maintain, keep, and control divers gambling devices, to wit, boards and lists," described as in the second count, "to be used in gambling in the manner following, known as 'Auction pools,' to wit: A race being about to take place between the horses named on said boards and lists in some place within the United States, but not within this state of Minnesota, at a time and place then named, the said Shaw and Brannigan would then and there announce that fact, and offer the first choice to the highest bidder, who would then, after his bid was accepted, select some horse from said boards and lists. Then second choice would be sold in the same way; also third choice, if there was any bidder for it; and then all the other horses, the names of which appeared on said boards and lists as taking part in said race would be sold together as the field, for one bid. The different purchasers would pay their money to the

·said Shaw and Brannigan, and would receive checks in return, on which would be marked the amount bid, and the purchase made by .him, and the total amount in the pool. · Upon the result of the race being announced, all the money in the pool would be delivered to the person who had named or purchased the successful horse, less a com- ·mission of three per centum, which would be retained by Shaw and Brannigan."

The first count is evidently based on section 294, and the second ·and third on section 295, Pen. Code. The statute enumerates cards, .dice, gaming tables, which are well-defined devices used in gambling, and then follow the words "or any other gambling devices whatever." Gambling is defined to be "a risking of money or other property be- tween two or more persons on a contest of chance of any kind, where one must be the loser and the other the gainer." A horse race may therefore be a game, and betting on a horse race is gambling, .and undoubtedly the parties charged in the indictment were gam- bling, and it might well be held that persons betting on such games ·would be liable to prosecution under section 296 of the Penal Code, .and that the house or place kept by defendants was a common nui- sance, and the keepers might have been indicted, under the common law, for "keeping a common gaming-house." But the offence here ·charged is gambling with "gambling devices," and "keeping gam- bling devices designed to be used in gambling." The term "de- vice" has the same meaning in both sections. Though the words "any other gambling devices whatever" are doubtless intended to include any kind of apparatus, contrivance, or instrument which may be used in games of chance, and upon the manipulation or operation of which the result of the game is determined, yet these terms, "gambling devices," must be construed *ejusdem generis* with the par- ticular devices which are described in the preceding portion of the ·same section, in fixing the general character of such devices referred ·to in the statute. *In re Lee Tong,* 18 Fed. Rep. 253. A horse race ·is not a gambling device, nor are descriptive lists of such races, or ·statements or announcements of the particulars thereof, from which those desiring to bet on the races may more conveniently obtain in- formation in respect to the same; and we are unable to see that the

boards and lists or records of the pools sold described in the indict-ment are anything more. There is no element of chance in their use, which we think is the test. The defendants' methods undoubt-edly serve to facilitate gambling, and so does the fact that they keep open a place for gambling, and the same may be said also of the published schedules of races and games, and many other acts and things, which, however, cannot be denominated "gambling devices" within the. meaning of the statute. The betting is on the races exclusively, and the result is in no way determined by the use of the instrumentalities in question, and no additional element of chance is introduced thereby.

The cases of *Com.* v. *Moody,* 143 Mass. 177, (9 N. E. Rep. 511,) and *People* v. *Weithoff,* 51 Mich. 203, (16 N. W. Rep. 442,) are cited in support of this indictment, but they arose under entirely different statutes, and only serve to illustrate more fully the defects and omissions in the statutes of this state as respects the charges in question here. In *Com.* v. *Moody* the prosecution proceeded under a statute of Massachusetts, (Acts 1885, *c.* 342,) which provides a penalty for buying or selling pools, or keeping a place for such purposes. And in *People v. Weithoff* the indictment was under a statute prohibiting gaming-rooms, and it was held that keeping a room where pools are sold was within the statute.

We are of the opinion therefore that, under the statutes of this state, the indictment cannot be sustained. It is accordingly directed to be quashed, and the defendants discharged.