(Opinion published 52 N. W. Rep. 41.)

---

STATE OF MINNESOTA *vs.* JOHN GRIMES.

Submitted on briefs April 26, 1892.   Decided May 3, 1892.

**Charter of Minneapolis Construed.**—The provision of the charter of the city of Minneapolis, giving the city council power to restrain and prohibit all descriptions of gambling and fraudulent devices and practices, *held* to authorize an ordinance prohibiting the keeping or setting up of any gambling device designed to be used in gambling, and imposing a penalty for its violation.

**Stock Clock—A Gambling Device.**—The contrivance commonly called a "stock clock" *held*, under the evidence, to be a gambling device.

Appeal by defendant, John Grimes, from an order of the Municipal Court of the city of Minneapolis, *Mahoney, J.*, made September 11, 1891, refusing him a new trial.

Complaint was made in said court that on June 30, 1891, in said city, John Grimes kept a gambling device known as a stock clock, then and there used in gambling, contrary to an ordinance of that city.   He was arrested, tried, and found guilty, and fined $100. He made a motion for a new trial, on the ground that the verdict was not justified by the evidence, and was contrary to law, and for errors of law occurring at the trial and duly excepted to by him. Being denied, he obtained a stay of execution, and appealed.

*Penney & Jamison,* for appellant.

The provision of the charter of the city of Minneapolis in question is Sp. Laws 1881, ch. 76, subch. 4, § 5.

The ordinance in question is entitled, An ordinance to prohibit gaming and gambling houses, approved May 13, 1877, as amended April 9, 1888.

The charter authorizes the city council to pass ordinances "to restrain and prohibit all descriptions of gambling, and all playing of cards, dice, or other games of chance."

A municipal corporation has no power to pass ordinances except such as are authorized by the express provisions of its charter, or by a clear and necessary implication therefrom.   Dill. Mun. Corp. § 89, (55;) Cooley, Const. Law, 194; *State* v. *Hammond,* 40 Minn. 43.   The power to restrain and prohibit all descriptions of fraudulent devices for the purpose of gambling does not authorize the passage of an ordinance providing for the punishment of a person for "keeping a gambling device."   *In re Lee Tong,* 18 Fed. Rep. 253; *City of Mount Pleasant* v. *Breeze,* 11 Iowa, 399.

*Robert D. Russell* and *L. A. Dunn,* for respondent.

By the charter the city council may, by ordinance, "restrain and prohibit all descriptions of fraudulent devices for the purpose of gambling in said city."   Under this charter provision the city council passed the ordinance which provides that "no person shall keep or

set up any gambling device whatever designed to be used in gambling or gaming within the city of Minneapolis." Here is a direct and specific grant of the legislative authority. The ordinance does not undertake to go one step beyond the specific provisions of the charter in this regard.

MITCHELL, J. The charter of the city of Minneapolis gives the city council power by ordinance "to restrain and prohibit all descriptions of gambling and fraudulent devices and practices, and all playing of cards, dice, or other games of chance for the purpose of gambling, in said city." Sp. Laws 1881, ch. 76, subch. 4, § 5.

Under this authority the council passed an ordinance providing that "no person shall keep or set up any gambling device whatever, designed to be used in gambling or gaming," and imposing a penalty for its violation. The ordinance was clearly authorized by the charter. Authorities are cited to the effect that the power to "suppress and restrain" does not include the power to punish. Even if this be good law, it is not applicable here, for the charter gives the power to restrain and *prohibit,* and the power to prohibit an act implies the power to punish its commission.

2. The defendant was charged in the complaint with keeping a gambling device commonly called a "stock clock,"—a mechanical contrivance composed of wheels, cogs, and weights,—kept and designed to be used in gambling.

The evidence showed that this machine was constructed so as to be wound up with a crank; that when wound up, weights suspended on cords furnished the motive power; that it had a spout, in which cards were placed, each card marked so as to represent a particular kind of railroad or other stock; that the "customer" would "invest" a sum of money in some "stock" represented by a particular card by purchasing a ticket from the owner of the machine; that the "clock" was then set in motion by pulling a cord, when two of the cards in the spout would, by the motion of the machine, be dropped or forced out of the spout through two slots, one of the cards dropping through the upper and the other through the lower slot. If the card representing the "stock" in which the "cus-

tomer" had invested was forced through the upper slot, then the stock "had risen," and he had won a sum equal to one half of the amount he had invested; while, if the card dropped through the lower slot, the stock "had fallen," and the customer had lost a like amount. In short, the customer was betting on which way the clock would force a particular card, and this depended entirely on chance. This was gambling, and the "clock" which was designed for use for that purpose was a "gambling device." A gambling device may be defined as an invention or contrivance to determine the question as to who wins or who loses his money on a contest of chance. *Portis* v. *State*, 27 Ark. 362.

The case of *State* v. *Shaw*, 39 Minn. 153, (39 N. W. Rep. 305,) relied on by counsel for the defendant, is not in point. While the lists and boards containing the names of horses that were to run might furnish information to those who wished to gamble by betting on the races, yet they had nothing to do with determining the result. But in this case the element of chance depended upon the movements of the clock itself.

There was no error in admitting evidence as to how the clock was operated by the use of the cards. The device was sufficiently described in the complaint without describing the cards.

The element of chance depended upon the movements of the clock, and not upon the cards. The clock was the device.

Order denying a new trial affirmed, and cause remanded for further proceedings.

(Opinion published 52 N. W. Rep. 42.)