Circuit Court of Appeals, Eighth Circuit.
March 27, 1934.

James H. Falloon and John C. Mullen, both of Falls City, Neb., for appellants.

Francis S. Howell and Fred A. Wright, both of Omaha, Neb., for appellee.

Paul F. Good, Atty. Gen., of State of Nebraska, amicus curiæ.

Before GARDNER and WOODROUGH, Circuit Judges, and MARTINEAU, District Judge.

GARDNER, Circuit Judge.

Appellee, as plaintiff, brought this suit in equity, praying for an injunction against appellants to restrain them from interfering with, seizing, taking, or threatening to take into their possession and custody merchandise vending machines known as "Mills Non-Convertible Venders," owned, leased, operated, and controlled by appellee, and from unlawfully molesting, arresting, intimidating, or interfering with appellee, or its lessees in possession of said machines, or with appellee's business and property rights in them.

The appellant Lewis W. Davies is sheriff of Richardson county, Neb., in which Falls City is situated, and appellant Judd Ankrom is the chief of police of Falls City. Appellants admitted the seizure of machines belonging to appellee and threats to arrest its agents and lessees in case of their installation and use, justifying their acts on the theory that the machines were gambling devices.

The appellee is and for the past forty years has been engaged in the business of selling and distributing candy mints throughout the United States, including the state of Nebraska. It has in the past conducted a business of large volume, and in connection therewith and as a means of stimulating the sale of its mints, it has designed, manufactured, sold, and rented an automatic mint vending machine known as the "Mills Non-Convertible Vender." This machine resembles in appearance and size a cash register of the ordinary type. On the right side of this contrivance is a metal lever, and on the front there is a column container on each side, covered by a pane of glass. Each of these columns contains packages of mints dispensed by the machine, and between the columns is a container also covered with a glass front, inclosing metal tokens. At the upper left-hand corner of the machine is an aperture for the insertion of 5-cent coins. The ma-

chine is put in operation by the insertion of a coin in the aperture and by drawing downward on the lever and then releasing it so that it returns to its original position. At the base of the machine, on the right-hand side, there is a metal knob which, on being turned by the customer following the insertion of the 5-cent coin and the drawing down of the lever, releases a package of the confection from one of the column containers.

When the machine is put into operation, three wheels or cylinders revolve, each independent of the other, and at different rates of speed. Printed upon each of the aforementioned cylinders are certain symbols, over each of which is inscribed an incomplete sentence, and said sentences are so arranged that when the cylinders cease revolving, said incomplete sentences, when read through three small glass windows located near the top of the machine, form complete sentences of a humorous vein. All confections sold by the machine are equal in value to similar merchandise retailed at the same price in confectionery and candy stores throughout Nebraska. In addition to the package of mints which the customer receives, the machine at intervals delivers certain metal tokens in various numbers. Each token has clearly inscribed on one side, "Property of O. K. Vender," and on the other side, "For amusement only." These tokens have no cash or trade-in value and can be used only to permit the customer to amuse himself further without additional expense. When one of these tokens is inserted in the aperture for the insertion of 5-cent coins, and the lever operated, further combinations of the humorous sayings printed on the cylinders are displayed and may be read. No confections can be obtained from the machine, however, when it is operated by the use of one of the metal tokens. On the front of each of these machines, conspicuously located, are two small printed signs, on one of which appears the following: "Watch reels for your fortune. Tokens received from this vender have no value, but may be used to replay this vender for customers' sole amusement. Watch the reels and have your fortune told." On the other appears the following: "Your nickel buys 5¢ candy 5¢. Deposit nickel and turn knob at lower right-hand side to receive one five-cent package of Vens. A package of confectionery vends with each five cents. Confectionery not vended with amusement tokens."

The machine is so constructed that it is impossible to obtain a delivery of any mints, or other thing of value, by the use of the tokens, and it is impossible to convert the machine into any other kind of a machine. These tokens have a hole through the center, through which a prong in the machine passes so that they cannot be used to obtain anything except the display of the printed matter on the cylinders.

There was no testimony that these machines were ever used for gambling purposes, and the only evidence as to their nature and use is contained in the description of the use to which they have been put. The lower court found as a fact "that said vending machines so seized by the defendants were not intended to be, nor were they being used for gambling purposes or as gambling devices or machines, or for any unlawful purpose." The court concluded as a matter of law that the use of these machines was not prohibited by the laws of the state of Nebraska and entered its decree enjoining appellants from interfering with, seizing, or taking into their possession or custody any Mills Non-Convertible Venders owned, leased, operated, or controlled by plaintiff, Mills Novelty Company, and from threatening to take into their possession or custody any such machine owned, leased, operated, or controlled by plaintiff, or which may be hereafter leased or rented by plaintiff to any individual firm or corporation within that portion of the District of the State of Nebraska known as Falls City, Neb., and that portion known as the county of Richardson, and from attempting to seize, destroy, or interfere with the property rights or possession of plaintiff.

From this decree appellants prosecute this appeal, contending that the keeping of these machines is violative of section 28-946 of the Compiled Statutes of Nebraska for 1929, which reads as follows: *"Keeping Gambling Fixtures, Penalty.* Whoever shall set up or keep any gaming table, faro, bank, keno or any other kind of gambling table or gambling device or gaming machine of any kind or description, under any denomination or name whatsoever, adapted, devised and designed for the purpose of playing any game of chance for money or property, except billiard tables, or who shall keep any billiard table for the purpose of betting or gambling, or shall allow the same to be used for such purpose, shall, upon conviction, be punished by a fine of not less than three hundred dollars, and not exceeding five hundred dollars, or be imprisoned in the penitentiary not exceeding two years."

The device, the keeping of which is prohibited by this statute, must be one "adapt-

ed, devised and designed for the purpose of playing any game of chance for money or property." The lower court specifically found that these machines were not intended to be and were not used for gambling purposes or as gambling devices. Any device which is used as a means of playing for money or other thing of value, where the result depends more largely on chance than skill, may properly be designated as a gambling device. McCall v. State, 18 Ariz. 408, 161 P. 893, Ann. Cas. 1918A, 168; Moberly v. Deskin, 169 Mo. App. 672, 155 S. W. 842; People v. Jenkins, 153 App. Div. 512, 138 N. Y. S. 449.

■ The term "gambling device," or "gambling machine," will include ordinarily only such instruments or contrivances as are intended for the purpose of gambling, and such as are used to determine the result of the contest on which the wager is laid. State v. Shaw, 39 Minn. 153, 39 N. W. 305; State v. Bryant, 90 Mo. 534, 2 S. W. 836; State v. Morris, 272 Mo. 522, 199 S. W. 144; People v. Engeman, 129 App. Div. 462, 114 N. Y. S. 174.

■ Under the evidence and the findings of the lower court, these machines are lacking in the essential elements necessary to make of them gambling devices or gambling machines. There is no element of gain or loss, financial or otherwise, involved in the transaction. The character of this machine was fully considered by the Circuit Court of Appeals of the Second Circuit in Mills Novelty Co. v. Farrell, 64 F.(2d) 476, 477, where it is said: "Similar vending machines ejecting tokens have been held by the courts in other jurisdictions not to constitute a gambling device. Ashcraft v. Healey, 23 F.(2d) 189 (C. C. A. 5); People v. Jennings, 257 N. Y. 196, 177 N. E. 419; Overby v. Oklahoma City, 46 Okl. Cr. 42, 287 P. 796. One may not suppose that a person desiring to gamble would put up money in the hope of obtaining tokens which can be used only to produce insignificant humorous sayings. The amusement feature of the machine does not make the machine a gambling device. It arouses interest and perhaps attracts customers to the machine in much the same way as advertising would, but this is lawful."

The Attorney General of Nebraska as amicus curiæ has filed a brief in which he submits that if this court should be of the view that the judgment appealed from should be affirmed, it should be with the provision that the appellants and their successors in office might at any time apply to the court below, by bill or otherwise, as they might be advised, for a further order or decree, in case it should appear that the statute has been sustained by the Supreme Court of Nebraska as valid and applicable to the conditions presented by the record. It is observed, however, that it is not claimed that there is any such action pending in the Supreme Court of Nebraska, but the utmost that is claimed is that there is a case pending in a trial court in the state of Nebraska which may possibly reach the Supreme Court of that state for final decision.

■■ This court accepts as controlling the construction of state statutes by the highest court of the state, but in the absence of such construction it is incumbent upon this court to place its own construction upon the state statute. Even the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction. In McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 505, 54 L. Ed. 762, the court said: "The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction, for both the state and Federal courts have certain concurrent jurisdiction over such controversies, and when they arise between citizens of different states the Federal jurisdiction may be invoked, and the cause carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same case. In the present case, so far as the record before the circuit court of appeals discloses, the circuit court of the United States had acquired jurisdiction, the issues were made up, and when the state intervened, the Federal court practically turned the case over for determination to the state court. We think it had no authority to do this, and that the circuit court of appeals, upon the record before it, should have issued the writ of mandamus to require the judge of the circuit court of the United States to show cause why he did not proceed to hear and determine the case."

We said, in McClellan v. Carland, 187 F. 915, 919: "As the United States Circuit Court for the District of South Dakota had jurisdiction of the suit of the complainants below it was its duty to proceed to try and decide it. The McClellans had the constitutional right to the speedy and independent opinion of the judge of the federal court upon the issues they presented and the fact that the state was litigating, or was about to litigate, in its own courts the same issues

constituted no sound reason why a national court should delay to adjudicate them."

Quite aside from these considerations, however, it seems to us that the rights of the state are carefully protected by the decree which recites that: "Provided, however, and this injunction is granted with the express reservation, that the said defendants, and all persons acting under them, are not by this decree enjoined from seizing any of such machines if and when used for gambling purposes or arresting any person or persons using, or permitting said machines to be used, for gambling purposes."

In the absence of the pendency of any case in the Supreme Court of Nebraska involving the issue here presented, we are clear that the request of the Attorney General cannot properly be granted.

The judgment appealed from is therefore affirmed.