HORACE P. FOLEY v. J. L. WHELAN AND OTHERS.[1]

January 26, 1945.

No. 33,894.

[1]Reported in 17 N. W. (2d) 367.

*Gillette & Meagher,* for appellant.

*Ostrander & Fullerton, Peterson & Gunderson, F. V. Nichols,* and *Elmer R. Peterson,* for respondents.

PETERSON, JUSTICE.

Plaintiff appeals from an order sustaining a demurrer to his complaint, which alleges that during the period from March 1, 1938, to August 15, 1943, he lost to defendants by playing coin-operated slot machines kept by them the sum of $20,000, the property of Wilson & Company Employees Credit Union, which would be the beneficiary of any recovery. The action was brought under the provision of § 614.09 (§ 10217), which, so far as here material, provides that the loser may recover from the winner any money lost "by playing at cards, dice, or other game." See, Nagle v. Randall, 115 Minn. 235, 132 N. W. 266.

Plaintiff contends that playing a slot machine for money is playing at a *game* within the meaning of the statute. Apparently he concedes that it is not playing at cards or dice. Defendants contend that such playing on a slot machine is not playing at a *game* within the meaning of the statute. Their argument is that under the *ejusdem generis* rule of construction, the word "game" is limited and restricted in meaning by the words "cards" and "dice" preceding it and that cards and dice, being essentially different instrumentalities from slot machines, the word "game" does not, when so construed, include slot machines.

The right of a loser to recover his losses at gambling from the winner was unknown at common law. The right of recovery is purely statutory. The particular case must come within some applicable statute. Gilbert v. Berkheiser, 157 Minn. 491, 196 N. W. 653. Unless playing at slot machines constitutes playing at a *game* within the meaning of the statute, plaintiff is not entitled

to recover what he lost. Nagle v. Randall, *supra*. Whether playing a slot machine constitutes playing at a *game* within the meaning of the statute depends on the construction of the statute.

The word "game" occurs in numerous statutes relating to the subject of gambling. Section 614.06 (§ 10214) prohibits gambling with cards, dice, gaming tables, or any other gambling device whatever. It contains provisions making it an offense to deal cards at the *game* called "faro," "pharo," or "forty-eight"; to keep any gambling device whatsoever designed to be used in gambling; and to bet any money or other property at or upon any gaming table, *game*, or device. Section 614.07 (§ 10215) makes it an offense to suffer gambling devices to be set up or kept on certain premises. Section 614.08 (§ 10216) provides that no person shall be excused from testifying touching any offense committed by another relating to gambling. Section 614.10 (§ 10218) provides that every note, bill, bond, mortgage, or any other security or conveyance given for money or goods won by gambling or playing at cards, dice, or any other *game* whatever, and certain other gambling debts shall be void. It is plain that all these statutes relate to the prohibition and suppression of gambling. Statutes relating to the same subject matter, especially where they have the same purpose in view, are *in pari materia* and are to be construed together the same as if they constituted but one statute. No act, or part of any act, or any section should be singled out for consideration apart from all the legislation on the subject. The object of the rule is to ascertain and carry into effect the intention of the legislature, and it proceeds upon the supposition that the several statutes were governed by one spirit and policy and consequently were intended to be consistent and harmonious in their several parts and provisions. State ex rel. Carlton v. Weed, 208 Minn. 342, 294 N. W. 370. All statutes relating to gambling are to be taken together as one law on the subject and as such are construed together. State v. Bess, 45 Tenn. (5 Coldw.) 55; Howlett v. State, 13 Tenn. (5 Yerg.) 144. Statutes authorizing the loser at gambling to recover his losses from the winner and those making gambling an offense should

be taken together as designed to prohibit and suppress gambling as a public evil. Macchio v. Breunig, 125 Conn. 113, 3 A. (2d) 670. The purpose of the statute permitting the loser to recover his losses from the winner is, as said in Cafferata v. Ginnochio (Mo. App.) 222 S. W. 867, "to aid the criminal law in punishing gamblers and their colleagues by taking from them the fruits of their wager," and, as said by Lord Sumner in Sutters v. Briggs [1922] L. R. 1 A. C. 1, at p. 25, by making the game "not worth while." Because the two statutes are *in pari materia* and because the statute authorizing the loser to recover his losses from the winner is in aid of the one making gambling an offense, the word "game" should be taken to have the same meaning in the former as in the latter. Godman v. Morley, 7 Mod. 438, 87 Reprint 1342; Lynall v. Longbothom, 2 Wils. K. B. 36, 95 Reprint 671; Blaxton v. Pye, 2 Wils. K. B. 309, 95 Reprint 828; Ellis v. Beale, 18 Me. 337, 36 Am. D. 726; Grace v. M'Elroy, 83 Mass. (1 Allen) 563. In Godman v. Morley, *supra,* plaintiff sued under the provisions of the statute of 9 Anne, c. 14 (12 Eng. Stat. 177), to the effect that the loser may recover from the winner money or goods lost by "playing at cards, dice, tables, tennis, bowls, or other game or games whatsoever," to recover money lost to defendant by betting on horse racing. The court held that the words "game or games" in the statute of Anne had the same meaning as they had in the statute of Charles, 16 Car. II, c. 7 (8 Eng. Stat. 209), which prohibited gaming by "playing at or with cards, dice, tables, tennis, bowls, skittles, shovel-board; or in any cock-fightings, horse-races, dog-matches, foot-races, or other pastimes, game or games whatsoever," and held that, although horse racing was not mentioned in the statute of Anne, the word "game" was to be taken as including horse racing because it was used with that meaning in the statute of Charles. In other words, the two statutes were construed as being *in pari materia.* The word "game" was so construed in later cases. Lynall v. Longbothom, 2 Wils. K. B. 36, 95 Reprint 671; Blaxton v. Pye, 2 Wils. K. B. 309, 95 Reprint 828. The American cases have so construed the two statutes. Tatman v. Strader, 23 Ill. 493 (horse racing);

Ellis v. Beale, 18 Me. 337, 36 Am. D. 726 (horse racing) ; Grace v. M'Elroy, 83 Mass. (1 Allen) 563 (dog fighting). The statute authorizing the loser to recover his losses from the winner cited in the Massachusetts case is identical with our § 614.09 (§ 10217), and those referred to in the Maine and Illinois cases are substantially the same.

Statutes giving the loser at gambling a right to recover his losses from the winner are deemed to be remedial and as such should be liberally construed in favor of the remedy provided and of those entitled to the benefits thereof. Richter v. Empire Trust Co. (D. C.) 20 F. Supp. 289; Salzman v. Boeing, 304 Ill. App. 405, 26 N. E. (2d) 696; Ellis v. Beale, 18 Me. 337, 36 Am. D. 726; Grace v. M'Elroy, 83 Mass. (1 Allen) 563; Galtrof v. Levy, 174 Misc. 489, 21 N. Y. S. (2d) 455. As said in Grace v. M'Elroy (83 Mass. at p. 565), *supra:*

"The statute in question is a remedial statute, and is to be liberally construed in furtherance of its apparent object. The evil to be remedied was certainly as great in the case of one who had lost his money on a wager on a dog-fight, as he who had lost his money by betting on a game at cards or dice. We think that it was the general purpose to apply the statute to gaming in all its forms recognized in the earlier statutes, as well as those which were particularly named therein."

So it is here. The chances of the game played on a slot machine are unequal against the player and in favor of the machine. State v. Gaughan, 55 W. Va. 692, 48 S. E. 210; Annotation, 20 Ann. Cas. 131. Such machines are, as we said in State v. Briggs, 84 Minn. 357, 361, 87 N. W. 935, 936, used to entrap "poor fools who believe that they can get something for nothing by beating a scoundrel at his own game." More than that, gambling, being itself a crime, is the cause of other crimes, idleness, and lack of industry and thrift. Section 614.09 (§ 10217) should be liberally construed to afford plaintiff a remedy to recover his losses.

There can scarcely be any doubt that playing a slot machine is *playing at a game* within the meaning of § 614.06 (§ 10214), making it an offense to bet any money or property at or upon a gaming table, *game,* or device. These terms are not defined in the statute. The words "gamble," "game," "gambling," and "gaming" are all derived from the old Anglo-Saxon word *"gamen,"* which means to play. People v. Todd, 51 Hun (N. Y.) 446, 21 St. R. 399, 4 N. Y. S. 25. The words "game" and "gamble" and "gaming" and "gambling," respectively, are taken as synonymous. Opinion of the Justices, 73 N. H. 625, 63 A. 505, 6 Ann. Cas. 689. Because the words are synonymous, all our statutes relative to gambling are found in the statutes under the heading of "Gaming." As said by Mr. Justice Cooley in People v. Weithoff, 51 Mich. 203, 16 N. W. 442, 47 Am. R. 557, in holding that betting upon a *game* constitutes *gaming:* "* * * those game or gamble who thus bet" (51 Mich. 212, 16 N. W. 446), and "The word 'game' is very comprehensive, and embraces every contrivance or institution which has for its object to furnish sport, recreation or amusement. Let a stake be laid upon the chances of the game, and we have gaming" (51 Mich. 214, 16 N. W. 447-448). We pointed out in State v. Shaw, 39 Minn. 153, 156, 39 N. W. 305, 307, that gambling devices are used "in games of chance." They are the instrumentalities by which the games are played. The insertion of a coin in a slot machine and the pulling of a lever sets its internal mechanism in motion. Occasionally the machine pays off in money, depending upon the operation of its mechanism. While the machine is so regulated that the chances are uneven against the player and in favor of the keeper, the result in the particular case is one of chance. The player risks the money used to set the machine in operation on his chances of winning a payoff by the machine. He bets his money against that of the machine's keeper, which is kept therein for the purpose. If the player loses, the machine keeps his coin; if he wins, it pays him with the payoff. The machine is the owner's robot or mechanical gambler, which not only accepts the bets of all comers but decides them also. It is, as we said of a "stock clock"

in State v. Grimes, 49 Minn. 443, 52 N. W. 42, a device or contrivance to determine as between the player and the keeper of the machine "who wins or who loses his money on a contest of chance." Consequently, slot machines are universally regarded as gambling devices. State v. Falgren, 176 Minn. 346, 223 N. W. 455; State v. Briggs, 84 Minn. 357, 87 N. W. 935; Lyman v. Kurtz, 166 N. Y. 274, 59 N. E. 903. Playing a slot machine is playing a game. State v. Shaw, *supra;* Territory v. Jones, 14 N. M. 579, 99 P. 338, 20 L.R.A.(N.S.) 239, 20 Ann. Cas. 128; State v. Busch, 59 R. I. 382, 195 A. 487; State v. Gaughan, 55 W. Va. 692, 48 S. E. 210; Daniels v. Pinks [1931] 1 K. B. 374; Thompson v. Mason, 20 Cox C. C. 641, 90 L. T. N. S. 649; Fielding v. Turner [1903] 1 K. B. 867, 89 L. T. N. S. 273, 72 L. J. K. B. 542, 51 W. R. 543, 67 J. P. 252, 20 Cox C. C. 531; Annotation, 135 A. L. R. 138. All the cited cases involved situations where playing a slot machine was held to constitute playing a game within the meaning of statutes making it an offense so to do. In Nagle v. Randall, 115 Minn. 235, 132 N. W. 266, *supra,* we assumed for purposes of decision that playing a roulette wheel was playing a "game" within the meaning of § 614.09 (§ 10217) and sustained a recovery by the loser against the winner. There is no difference in principle between playing roulette and playing a slot machine; in both cases a bet is made on the chance operation of a mechanism. If playing roulette is playing at a game, playing a slot machine is also. Since playing a slot machine is a *game* within the meaning of § 614.06 (§ 10214), making gambling an offense, and since the word "game" has the same meaning in § 614.09 (§ 10217), authorizing the loser to recover his losses from the winner at a "game," it follows that playing a slot machine is playing at a "game" within the meaning of the latter statute. Money lost by playing a slot machine is lost at playing a "game" within the meaning of § 614.09 (§ 10217).

Defendants invoke the rule of *ejusdem generis* and contend that the word "game" in § 614.09 (§ 10217) is restricted by the preceding words "cards" and "dice" to instrumentalities of the same kind as the two mentioned. The rule has no application to the instant

case, because it is applied only where the meaning of a particular word is to be determined by construing it with preceding words in the same statute, and not where, as here, the meaning is to be found elsewhere. The principal underlying rule of *ejusdem generis* is that the legislature had in mind things of the same kind and was speaking of them as a class. In that view, as applied to the section in question, the word "game" would be construed as limited and restricted by the preceding words "cards" and "dice," but, as we have pointed out, the meaning of the word "game" in § 614.09 (§ 10217) is not to be found within the section itself, but elsewhere, namely, in § 614.06 (§ 10214). By construing the two statutes to be in *pari materia,* the rule of *ejusdem generis,* as invoked, is inapplicable. See, Grace v. M'Elroy, 83 Mass. (1 Allen) 563, *supra.* In State v. Shaw, 39 Minn. 153, 39 N. W. 305, *supra,* we held that the rule was applicable to the first sentence of § 614.06 (§ 10214). The meaning of the words used in that sentence was to be found there and nowhere else. But, in State v. Briggs, 84 Minn. 357, 87 N. W. 935, *supra,* in holding that a slot machine was a gambling device, we held that the rule was inapplicable to the other specific provisions of that section. Likewise, it is inapplicable to the specific provision of that section making playing at a *game* an offense. If the rule were applicable at all, it would be in a very narrow and limited sense only and then would afford the defendants no benefit. In Raymond v. Green, 194 Mich. 639, 640, 161 N. W. 857, 858, where the loser recovered from the keeper his losses at playing on a slot machine, the court held that playing a slot machine is of the same nature as playing or betting at cards within the meaning of a statute providing that the loser may recover his losses sustained "by playing or betting on cards, or by any other device in the nature of such playing and betting." Of course the only similarity was that both involved a gambling feature. There is the same similarity between playing at dice and playing a slot machine. Since that is true, playing a slot machine is in principle the same kind of a game as playing at cards or dice.

Our conclusion is that the complaint states a cause of action and that it was error to sustain the demurrer.

Reversed.

[1]Reported in 17 N. W. (2d) 313.