JOHN MROWIEC, Plaintiff, *v.* POLISH ARMY VETERANS ASSOCIATION OF AMERICA, POST 124 OF SYRACUSE, NEW YORK, INC., Defendant.

Supreme Court, Trial and Special Term, Onondaga County, August 7, 1947.

*Harlow B. Ansell* for defendant.

*Van Lengen, Ringwood & Pasqua* for plaintiff.

SEARL, J. This motion seeks an order (a) striking out certain allegations of the complaint, (b) requiring the plaintiff to separately state and number each alleged cause of action, (c) dismissing the complaint for the reason that the alleged cause of action did not accrue within three months, as provided by section 995 of the Penal Law, after the payment of money claimed to have been placed in slot machines (Rules Civ. Prac., rule 107, subd. 6), and (d) that the complaint does not state facts sufficient to constitute a cause of action. (Rules Civ. Prac., rule 106.)

The complaint alleges defendant is a membership corporation, that its officers, agents or servants permitted slot gambling machines to be kept upon its premises, that plaintiff was invited to frequent the premises, and between the dates of April 1, 1946, and September 30, 1946, he lost at gambling on the machines the sum of $13,500.

It will be necessary to examine only objection (c) whether the action is barred by a Statute of Limitations, and (d) whether the complaint states a cause of action. If the motion be granted on either of these two grounds, decision on other grounds becomes purely academic.

Section 980 (Penal Law) provides that " A person, who persuades another to visit any building or part of a building, or any vessel or float, occupied or used for the purpose of gambling, in consequence whereof such other person gambles therein, is guilty of a misdemeanor; and in addition to the punishment prescribed therefor, is liable to such other person in an amount equal to any money or property there lost by him at play, to be recovered in a civil action." It is very apparent that this section applies to a " touter " or " procurer ". It provides a remedy against such " person ", not applicable here.

Section 982 relates to " Keeping slot machines or devices ", and provides that it is unlawful to " store, keep, possess, * * * or to permit the operation of * * * any slot machine ". It is unnecessary to be more explicit as to the definition of a " slot machine " as set forth in the section.

Section 990 provides that " A person who wins or loses at play or by betting, at any time, the sum or value of twenty-five

dollars or upwards, within the space of twenty-four hours, is punishable by a fine not less than five times the value or sum so lost or won, to be recovered in a civil action, by the persons charged with the support of the poor in the place where the offense was committed, for the benefit of the poor.''

Approaching now, consideration of the two sections of the law most directly affecting the determination of the instant motion, we find first:

'' § 994. *Property staked may be recovered.* Any person who shall pay, deliver or deposit any money, property or thing in action, upon the event of any wager or bet prohibited, may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not.''

This is followed immediately by:

'' § 995. *Losers of certain sums may recover them.* Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof.

'' In case the person losing such sum or value shall not, within the time aforesaid, in good faith and without collusion, sue for the sum or value so by him lost and paid or delivered, and prosecute such suit to effect without unreasonable delay, the overseers of the poor of the town where the offenses were committed, may sue for and recover the sum or value so lost and paid, together with treble the said sum or value, from the winner thereof, for the benefit of the poor.''

Peculiarly, the leading case that has been followed for many years arose in Syracuse in 1864, *Langworthy* v. *Broomley* (29 How. Prac. 92). Sections 994 and 995, above quoted, were then, and had been since the year 1830, couched in substantially the same language as exists today. Mr. Justice MORGAN, writing in the *Langworthy* case (*supra*), pointed out that by the different sections the Legislature had made provision for two classes of cases " * * * one where parties bet or wager a sum of money upon some contingent event; and the other, where the parties play at a game, or bet on the sides or hands of such as do play.''

The court pointed out that the provisions as now contained in section 994 pertained to a wager upon some contingent event, such as the result of a horse race or a presidential election, whereas the provisions of the latter section, now section 995, related to gambling at cards, dice or some other game.

In the *Langworthy* case (*supra*) as in *Meech* v. *Stoner* (19 N. Y. 26), therein cited, the loser lost while playing the game of " faro ".

Both cases sustain the conclusion that if the loser in a game of chance is to recover, he must by his complaint bring himself within the provisions of the statute. In other words, he must allege that the action is commenced within three calendar months after payment or delivery of his loss, also that the sum or value of $25 or upwards was lost at that particular sitting. (See, also, *Fowler* v. *Van Surdam*, 1 Denio 557; *Liebman* v. *Miller*, 20 Misc. 705; *Wilkenfeld* v. *Attic Club*, 74 Misc. 543.)

Our courts have followed the common law of England to effect that the loser at gambling is " an equal sharer " in the offense, that the loser is unworthy to be heard, and " thus the parties are left where the law finds them." When section 995 was enacted, the loser was afforded a remedy, provided he acted diligently to recover his loss.

The right to recover under both sections 994 and 995 are remedial and not penal. This question was answered when Lord WILLIAM BLACKSTONE wrote in the case of *Bones* v. *Booth* (2 Wm. Bl. 1226) in the year 1788. The English statutes were similar in most respects to our own sections 994 and 995. A verdict had been rendered in favor of the defendant. Counsel for the latter argued that a new trial could not be granted as the law was penal in its nature. The appellate court held the statute to be remedial only, as the provisions of the statute did not provide that the defendant could be placed in the pillory in event the verdict was against him.

Another interesting feature of this old decision is that it interprets our modern statute wherein our statute uses the expression: " * * * lose at any time on sitting * * *." In the English case the gaming participants gambled at the game of " all-fours " in the city of Bristol at two guineas a game from Monday evening continuously through until Tuesday evening, with the exception of one or two hours for dinner. The expression at " any one sitting " was interpreted by the Justice to mean as long as the gaming participants were in each other's company, although they took an hour or two out for dinner.

The plaintiff in the instant case raises a question seemingly thus far judicially undetermined. He urges that this action is brought under the provisions of section 994 relating to a prohibited " wager or bet ", wherein the time to commence an action to recover has not expired. Was this $13,500 sought to be recovered lost by putting it in slot machines maintained by defendant a " wager or bet ", or was it lost " by playing at any game ", and included within the purview of section 995, which provides plaintiff's action, if any, must be instituted within three months?

We must start with the premise that the claimed loss comes within the provisions of section 991 (Penal Law) providing: " All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event whatever, shall be unlawful."

Thus, the use or maintenance of slot machines being unlawful (Penal Law, § 982), the plaintiff would have no remedy by way of recovery of loss except as specifically provided by either section 994 or section 995. If plaintiff did not deposit and lose this considerable sum of $13,500, or 54,000 quarters, providing he only deposited a quarter of a dollar at each play, as a " wager or bet ", or by " playing ", he has no remedy.

Many authorities hold that section 994, in relating to bets or wagers, pertain to the commonly accepted wagers on races or election bets; in other words, the result is a contingency. True, the placing of a quarter in a slot machine would create a contingency as to whether the player or the owner of the slot machine would win. However, the same contingency would exist between any two or more players at cards, dice, faro, roulette, dominoes or scores of other games that afford an element of chance and equally an opportunity to gamble.

In coming to a conclusion, we must take the common and accepted use of the words as gleaned from a dictionary definition, and from their use in opinions taken from reported cases. Webster's New International Dictionary (1940) gives: " *Games of chance* include all games in which chance is the sole or a considerable factor in determining the outcome, as in dice and in most card games." *Wager* is: " To hazard on the issue of a contest, or on some question that is to be decided, or on some casualty; to risk; venture; also to stake; bet; to lay as a gamble."

Searching for light in opinions of our court involving questions touching the law relating to slot machines, we find Judge CRANE using the expression " played " in *People* v. *Jennings*

(257 N. Y. 196, 198). Relating to a slot machine affording free games to the winner, we find the statement of the State Reporter in *People* v. *Swartz* (282 N. Y. 596, 597) making this reference: " he then played these free games ". Again, the Second Department in *People* v. *Raziano* (268 App. Div. 798, 799) refers to " winning players ". In *People* v. *Boxer* (24 N. Y. S. 2d 628, 631) the court refers to " play the game ".

A case most nearly in point is that of *Foley* v. *Whelan* (219 Minn. 209). The Minnesota statute (1941, § 614.09) provided that the loser might recover from the winner any money lost " by playing at cards, dice, or other game." Plaintiff maintained that playing a slot machine for money was playing a game within the meaning of the statute. Defendant argued that as the words " cards " or " dice " preceded, the statute did not contemplate or include slot machines, entirely different instrumentalities. The court held that similar statutes in other States held that the word " game " included dog fighting and other similar types of gambling, that the words " gamble ", " game ", " gambling " and " gaming " are all derived from the Anglo-Saxon word " ' *gamen* ' which means to play ", citing *People* v. *Todd* (51 Hun 446). The court, therefore, held (pp. 215, 216) that " Money lost by playing a slot machine is lost at playing a ' game ' ", and that " playing a slot machine is in principle the same kind of a game as playing cards or dice."

This court can come to but one conclusion, namely, that the plaintiff, when playing the slot machine, was playing a game. He came within the provisions of section 995. In fact, the language of his own complaint states: " * * * the users thereof were playing a game of chance in that the machine would pay a certain percentage in kind that the player used, provided that certain numerals, figures or designs would appear on the machine ". Such is not termed by the plaintiff, nor can it be construed by this court, to be a bet or wager. The play on the machines is alleged to have occurred between April 1, 1946, and September 30, 1946. The summons is dated April 16, 1947, more than three months after the last date of play.

The complaint is clearly defective in another respect. The Legislature has seen fit to afford no cause of action for losses at one time for sums less than $25. The complaint alleges loss of $13,500 between the two dates referred to. As each loss in excess of $25 at any one time constitutes a separate cause of action, it would be necessary for plaintiff to separately number such causes of action and allege dates and amounts claimed to be lost at each time.

An order may issue dismissing the complaint.