# W. E. FOSTER AND ANOTHER v. EMMETT BUTLER.[1]

March 21, 1940.

No. 32,310.

*Doherty, Rumble, Butler, Sullivan & Mitchell* and *Edgar G. Vaughan,* for appellant.

*William G. Parker* and *John H. Derrick,* for respondents.

[1]Reported in 291 N. W. 505.

HILTON, JUSTICE.

After an adverse verdict, defendant made a motion for judgment notwithstanding or for a new trial. This appeal is from the denial of the motion for a new trial upon the condition that the verdict be reduced $500.

The asserted cause of action is premised upon an alleged oral contract between plaintiffs, Schwanbeck and Foster, and defendant. Nearly all the determinative facts are in sharp dispute. Plaintiffs' claim, as gathered from the testimony, had its source in the following. Defendant was developing a vending machine to dispense ice-cream bars. Plaintiffs became interested and interviewed defendant. This was in the early part of 1937. After some discussion, according to plaintiffs, defendant asked Schwanbeck if he would go to the plant of Mayflower-Lewis Corporation, where the work was being done, and there develop and perfect the machine for marketing. Schwanbeck said that he would if plaintiffs were given exclusive sales rights to it. Defendant is claimed to have said that was "fair" and he saw no reason why it could not be worked out. However, defendant mentioned that there had been some communications with Automatic Canteen Company, a large user of vending machines, and that he preferred that this part of the sales be kept out of the agreement. Schwanbeck said that was agreeable.

In September, 1937, after several months of work, plaintiffs reported that the vending machine was fit to be offered for sale. Discussion then arose concerning possible purchasers. Defendant stated that Canteen would not buy any machines unless it was given the exclusive right to purchase. Schwanbeck testified that defendant "asked if we would be willing to forego sales rights and sell to Canteen exclusively." They claim they agreed on certain conditions and submitted a memorandum bearing the date of September 25, 1937, to defendant. Defendant denies that this was ever received by him. A reading of the memorandum leads to the conclusion that it was a proposal to negotiate on certain alternative terms. It stated that two definite plans of operation

were to be considered: (1) The plaintiffs should operate the machines themselves; (2) the machines should be sold to others, mentioning Canteen as a prospect. If the selling plan were adopted, their proposal was that they should receive $75 on each machine, this to include sales and service costs. Plaintiffs claim that some time thereafter defendant said he had read the memorandum and stated, "It sounds all right to me." Apparently the parties, according to plaintiffs' version, proceeded with the plan to sell to Canteen exclusively, at least until it was determined that they would not purchase.

After some correspondence, a representative of Canteen Company came to St. Paul to discuss a possible purchase. After the meeting, according to plaintiffs, Laurence Butler, who was closely associated with defendant in the matter, indicated that he could not see what use plaintiffs now were to defendant. The tenor of plaintiffs' evidence is that thereafter they were gradually eliminated. In November, 1937, Laurence Butler "suggested * * * that if we would take $10,000 and step out of the deal" defendant would be willing to pay such a sum. At the time of this conversation plaintiffs disclaim that they had any cause of action and were simply discussing the machine and sale to Canteen. Over objection, plaintiffs introduced evidence of this November conversation between them and Laurence Butler wherein the latter said: "Well, if we gave you $3,600 apiece, plus the $1,750 that you invested in this thing, would you be satisfied?" Plaintiffs testified that they accepted under protest and then defendant's son said: "Well, when the first order we get, then, if that is agreeable to you, then we will settle on that basis." Plaintiffs then stated: "Yes, that is a deal, when you get your first order." Later plaintiffs claim that defendant was asked if he was aware of the offer, and he said: "Yes, he was aware of some conversation along that line; that he felt it was best not to do anything about that at the moment."

For defendant, the general denial embodied in the answer typifies the nature of the defense. Among other things, it is denied

that the plaintiffs were given any exclusive sales rights or that there was any definite agreement between plaintiffs and defendant to adopt the sales plan proposed in the memorandum. Defendant testified that while there was some talk about Foster selling machines on behalf of Mayflower-Lewis Corporation, there was never a binding agreement. It is also urged that the evidence does not sustain that defendant was the contracting party, assuming that there was a contract.

Machines were eventually sold to Canteen. The jury returned a verdict for plaintiffs for $3,642.66. It was reduced $500 by the plaintiffs, pursuant to the conditional order of the court.

The complaint appears to be drafted with reference to the alleged agreement of September, 1937. It alleges that in that month plaintiffs and defendant entered into an agreement whereby the former were granted the exclusive sales rights to the vending machine and were to receive $75 on each sale. It is then averred that pursuant to the agreement they entered into negotiations for sales to several firms and individuals, including Canteen. Following this are allegations of breach and damages by defendant.

Defendant urges that the evidence does not sustain the verdict for the reason that there is not any evidence showing that defendant accepted one of the particular alternatives mentioned in the memorandum. From the evidence, it satisfactorily appears that plaintiffs produced sufficient testimony which the jury could believe showing that if there was not an express oral acceptance there was an implied assent to the proposed sales plan. Likewise, it was a fact issue whether defendant was the contracting party or Mayflower-Lewis Corporation, in which he had a substantial interest.

With some difficulty we have finally concluded that what defendant urges is that the September agreement was within the provisions of the statute of frauds which requires agreements not to be performed within a year to be executed with certain formalities. 2 Mason Minn. St. 1927, § 8456(1). The memorandum was signed by plaintiffs but not by defendant. With reference to the

duration of the time for performance, the testimony is meager. Foster testified that he told defendant that the agreement "must be a continuous one as long as we wanted to operate on that basis." Defendant said, according to plaintiffs, that this "was agreeable." On cross-examination more details as to the duration of the agreement were brought out. From the testimony it is difficult to be sure whether counsel and the witness were both talking about the September agreement, but, assuming this to be so, the witness testified that he expected the contract to run "indefinitely." "Our talks indicated right at the start a five-year program," and "we didn't expect to stop then."

Necessarily defendant relies upon the testimony that "our talks indicated right at the start a five-year program" as establishing that performance encompassed at least five years. We cannot concur in the contention that it does. Nothing in the entire record proves that the parties actually agreed that the duration of the sales agreement should be at a minimum, five years. While the parties might have talked about such a period or "indicated" that the performance should last at least that long, there is no compelling proof establishing that it was actually a contractual term definitely agreed upon. Absent this, we cannot hold, as a matter of law, that the statute of frauds is applicable. Because we must reverse for reasons to be mentioned subsequently, on the new trial satisfactory evidence that performance was to be at least longer than one year may be adduced. We do not intend that what we have said as to the present record is to preclude the litigants on the new trial. On this appeal it must be held that the trial court correctly disposed of the assault on this aspect of plaintiffs' case.

We must disturb the verdict and order a new trial. Over defendant's seasonable objections, plaintiffs were permitted to relate in detail the conversation which took place in November, 1937, between plaintiffs and Laurence Butler. Assuming that the conversations were sufficient to create a contract, they would be admissible under proper pleadings, but they were not under the

complaint as framed. Plaintiffs did not rely upon this conversation either by pleading or proof to describe their rights or furnish the foundation for recovery. They did not request that the jury be instructed upon this November agreement. Reduced to the essentials, the only purpose such testimony could serve was to bolster the previous testimony and lend color to the version that plaintiffs urge is the true account of the relationship. There is very little room for doubt that a jury hearing evidence of this conversation, which in nature so closely parallels an offer to settle, would naturally regard it as a confession of plaintiffs' contentions. Person v. Bowe, 79 Minn. 238, 82 N. W. 480, does not control. The instruction of the trial court was not adequate or sufficiently comprehensive to cure the prejudicial effect of the testimony.

In passing, although the point does not appear to have been briefed, we feel compelled to mention that if the November conversation created a contract it is then difficult to understand how plaintiffs can recover for breach of the contract alleged. By proof of the November conversation, if a contract was thereby created, plaintiffs established that the agreement sued upon and specifically alleged did not actually represent the final and controlling contract of the parties. A litigant cannot select one of a series of agreements and maintain an action when the agreement sued upon has in law been supplanted by another. Whether this might be a basis for reversal need not now be determined.

Defendant has raised many other claimed errors. Most of these can be eliminated, if they are such, on the new trial. Counsel have had the benefit of one trial and should be able to litigate the issues without any serious difficulty.

For the reasons stated, the order appealed from is reversed and a new trial is ordered.

STONE, JUSTICE (concurring specially).

I concur in the result.