# IVAN BERG AND OTHERS v. ROBERT ULLEVIG.[1]

April 22, 1955.

Nos. 36,531, 36,532, 36,533, 36,534.

---

[1]Reported in 70 N. W. (2d) 133.

*Sullivan, Stringer, Donnelly & Sharood,* for appellants.
*Sexton, Tyrrell & Jardine,* for respondent.

NELSON, JUSTICE.

Four personal injury actions were commenced arising out of an intersection collision which occurred February 17, 1953, at the intersection of West Eighth street and Tyler street in the village of Hastings, Dakota county, Minnesota. The actions were consolidated for trial. Verdicts were returned for the plaintiffs in the following amounts: Ivan Berg, $5,600; Rose Berg, $400; Loretta Maher, $800; Richard Berg, a minor, $250. The verdict in favor of the minor, Richard Berg, was increased by an additur to $475. After denial by the court below of motions for a new trial, plaintiffs appealed from the four judgments entered. They contend that the verdicts are inadequate due to insufficient damages appearing to have been given under the influence of passion and prejudice; that the jury did not take into consideration all the evidence produced at the trial, or if the jury considered all the evidence, it so misconstrued the same as to produce an inadequate verdict; that there were errors of law occurring at the trial and objected to at the time; and that the verdicts of the jury were not justified by the evidence and were contrary to law.

The legal issues are:

(1) Did the court below abuse its discretion when it refused to grant plaintiffs' motions for a new trial on the grounds that the verdicts of the jury were inadequate and appeared to have been given under the influence of passion or prejudice or on the ground that the verdicts returned were entirely inadequate?

(2) Did the court below commit reversible error in excluding certain portions of the opinions offered or expressed on the part of plaintiffs' medical experts?

Facts of importance here are as follows: Ivan Berg owned and operated an automobile in which his wife, Rose, his minor son, Richard, and Loretta Maher were riding as guest passengers at the time of the collision with defendant's automobile. Ivan Berg was an employee at the Cudahy packing plant. He had been a regular employee of Cudahy's at least as far back as 1948. Prior to November 1952 he had been employed in the company's hide cellar. He complained of severe and permanent injury to his back as a result of the accident. However, he went back to work on the evening shift at Cudahy's after the accident, and, with the exception of having lost four and one-half days of work allegedly due to his back condition and having taken off two weeks for vacation, he sustained no other loss of time up to the time of trial. He consulted Dr. Norbert J. Kulzer of Hastings on the day of the accident, and his condition was diagnosed as contusions and a lumbar sacrum sprain. He also consulted Dr. Weiss of Hastings twice and Dr. Juers at Red Wing once. Later he was sent by Dr. Kulzer to Dr. Donovan McCain, an orthopedic surgeon in St. Paul, who saw him for examination and treatment on April 28, 1953, and again on September 28, 1953. A spinogram was performed upon the advice of Dr. McCain which proved to be negative. This was done by a Dr. Nash at St. Luke's Hospital, St. Paul. He submitted to the spinogram for the reason that Dr. McCain thought there were signs of a protruded disc. Dr. McCain stated that in his opinion there was a disc injury, but he admitted that there were certain definite signs and results of clinical tests negating the presence of such injury and that Achilles, Patellar, and Plantar reflexes were the same on both legs and these were negative as to the presence of a protruded disc. He further admitted in his opinion testimony that, even though he should go so far as to perform a laminectomy, he might not find a protruded disc although he thought there appeared to be evidence of a disc injury, and he testified in answer to a hypothetical question that in his opinion it was related to the accident.

It appears from the testimony of Ivan Berg and his local doctor, Norbert J. Kulzer, that he had sustained two back injuries prior

to this accident, one either in 1948 or 1949 and another in 1952. These, according to the testimony of Dr. Kulzer, involved what was termed a lumbar sprain. He lost approximately three months' time from work after the accident in 1948 or 1949 on account of the back injury due, he said, to lifting of heavy hides in the Cudahy hide cellar. On November 4, 1952, he was transferred to an easier job at Cudahy's as a cook. There was testimony on the part of Dr. McCain, his own medical expert, that his difficulty in the lumbar region could be a reoccurrence of a former back injury, providing the reoccurrence came about within a six-months period, that is, it could then be related to the first injury. He also testified that discs usually protrude because of an inherent weakness; that they may protrude without any accident, by a simple bending movement or by stepping into a low spot; and that the most common cause of disc injuries is a lifting strain.

Ivan Berg expended $269 for medical care. He testified that he suffered property damage to his automobile in the amount of $600. There was some testimony that, if he should undergo an operation for a disc injury, future medical care would amount to $582. The jury found that he had suffered damages to his automobile in the amount claimed, namely, $600, and to this they added $5,000 as general and special damages for his personal injuries. Upon the testimony as a whole relative to Ivan Berg's complaints, the jury could well have attributed more or less of his difficulty to his former injuries. They may have concluded that they were in the conjectural and speculative field when confronted with the claims of future and permanent injury and loss of future earnings; that the results of the accident necessitating future medical care were largely based upon medical testimony which tests negate in many respects; that the evidence did not in fact establish the existence of a protruded disc; and that his complaints were only in part the result of and due to the accident of February 17, 1953. Based upon the opinions of the medical experts and the testimony generally, the jury was free to draw inferences from the evidence as a whole. The jury having returned exactly what was asked for in the matter of property damage and having added thereto $5,000 as applicable to the other

items of his claim, we cannot say that the verdict was entirely inadequate and that the trial court abused its discretion in denying plaintiff a new trial.

Loretta Maher, who was thrown clear of the car at the time of the accident, went to the same doctor, Norbert J. Kulzer, in the afternoon on the day of the accident. Dr. Kulzer testified that he diagnosed her condition then as being contusions of the inner chest (no marks being visible); difficulty in breathing; pain in her lower chest and right shoulder; and sprains of the right elbow and right ankle. He found no abnormal heart condition. Chest X rays appeared negative. Later he found that her heart-beat rate was higher than normal and that her temperature became elevated; she displayed signs of fever and when this occurred he advised that she was not fit for work. She testified that about a week after the accident she had full movement of her arms and legs. Loretta Maher, a married woman who acted as the housekeeper for herself and her husband, had worked continually for four years as a punch press operator at Hudson Manufacturing Company in Hastings. She had earned about $90 in every two weeks, but she states that after the accident she was unable to work except for a week of half days in April. She did not work thereafter until December 1, 1953. Then she commenced to work for half days up to the middle of December 1953 when she began a full-time schedule. Her condition immediately following the accident was attributed to a severe blow in the chest due to the accident.

After being treated for some time by Dr. Kulzer, she was examined by Dr. Joseph M. Ryan, a specialist in internal medicine, who saw her both for treatment and for evaluation as to her condition at that time. She continued to suffer from contusion of the thorax and some injury to the thoracic cage. It appears from the medical testimony that an electrocardiogram was found to be negative as to any damage to the heart. She continued to have pain in the chest, about the tenth rib, until as late as August and September 1953. Both Dr. Kulzer and Dr. Ryan testified that there was evidence of fever. Tests given for undulant fever were negative. She was treated by both doctors for other ailments according to the

record. No information was made available as to any such malady or the treatment for it. Neither was there any breakdown as to the reasonable value of Dr. Kulzer's services, which amounted to $479. No explanation was given as to what portion of this medical expense was made necessary by the accident and what portion was due to the treatment of other conditions which had no connection with the accident.

Loretta Maher and her husband moved into another apartment in the month of June 1953. The testimony shows that she did her own housework at that time and assisted generally as a housewife ordinarily would in re-establishing them in their new home and did the housework during all of the time she was away from her job at the Hudson Manufacturing Company except as she would receive assistance from her husband in cleaning, dusting, and washing. Her difficulties seemed to have cleared up after she had gone back to work in December 1953. The only complaint thereafter was that she had lost 15 pounds in weight since resuming her regular work, which she attributed to nervousness in the machine room in which she was operating a punch press. There was also testimony by both doctors that she evidenced symptoms of neuropsychosis—nervousness not connected with any organic reason.

Dr. Ryan's services appeared to be reasonably worth $78, including X-ray charges. Again there was no breakdown as to what part of Dr. Ryan's bill was connected with the injury due to the accident. While she claimed in all to have expended $557 for medical care, the jury was without a yardstick by which to measure the share attributable to medical expenses made necessary by the injury due to the accident and to separate it from what was due to other causes. The medical testimony again clearly indicates, as does her own testimony, that some of the ailments and the difficulty she was having during the period that she was away from her job at the Hudson Manufacturing Company was due to other causes not connected with the accident. Upon those facts the jury may well have concluded that she did not in fact owe but a limited amount of her medical expenses for relief due to results of the accident and that her claim of lost earnings between the date of the accident, February 17, 1953,

and December 1953, when she went back to work, was in part due to other causes—in part to the injury arising out of the accident and in part to her own choice. There was evidence upon which the jury could find total damages as reflected by their verdict in the amount of $800.

It seems unnecessary to discuss at length the verdict returned in favor of Rose Berg for $400. The jury could well conclude that this amount was adequate taking into account her injuries, medical expenses, and time lost. As to the verdict returned in favor of Richard Berg for $250, the record discloses that the court made an additur raising this amount to $475. No further discussion of that verdict would serve any purpose since there is no proof of any inadequacy in the record stemming from his injury, medical treatment, and medical expense.

This court in the recent case of Brannan v. Shertzer, 242 Minn. 277, 287, 64 N. W. (2d) 755, 761, in discussing the inadequacy or the excessiveness of verdicts, said:

"* * * A verdict cannot be set aside simply because this court may be of the opinion that it was not adequate. Because other juries have returned verdicts for larger amounts for similar injuries does not authorize us to interfere with the verdict. There is no fixed standard by which loss for injuries can be determined. Naturally the minds of reasonable men may differ widely upon such a proposition. As pointed out in the case of Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391, this court will not interfere with a verdict in such cases unless the damages awarded clearly appear to be excessive or inadequate and to have been given under the influence of passion or prejudice. And whether a new trial upon the ground of excessive or inadequate damages should be granted or refused or whether the verdict should be reduced or increased rests in the sound judicial discretion of the trial court."

Plaintiffs on appeal have cited the case of Hurr v. Johnston, 242 Minn. 329, 65 N. W. (2d) 193, a recent decision of this court where a new trial was ordered as sustaining their position that the verdicts rendered in the instant case were entirely inadequate. In the Hurr

case the total verdicts were less than the clearly proved special damages and therefore practically nominal. Further in that case the record gave rise to a strong inference that the jury had compromised between the question of the right of recovery and the amount of damages and that therefore neither party to the action had been afforded their fair day in court.

■ We are unable to say from the testimony and the record as a whole, when considering one or all of the verdicts, that any one of the verdicts returned was insufficient in damages due to being given under the influence of passion and prejudice or that there is to be found among them an entirely inadequate verdict such as would give rise to a clear abuse of discretion on the part of the trial court in denying a motion for a new trial. It is the general rule in this state that the question of whether a verdict is adequate is addressed in the first instance to the sound discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion. Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L.R.A.(N.S.) 439; Litman v. Walso, 211 Minn. 398, 1 N. W. (2d) 391. New trials have been ordered on appeal where on the record the damages awarded appeared to be entirely inadequate. Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Olson v. Christiansen, 230 Minn. 198, 41 N. W. (2d) 248.

If the evidence produced before the jury is of such a character that it might well leave some doubt regarding the extent of the physical injuries complained of and the verdict returned is not a nominal one, this court will not ordinarily interfere with the trial court's exercise of its discretion in denying a new trial. Of course, where damages are manifestly inadequate and in addition thereto there is a suggestion that they were awarded as a compromise between the right of recovery and the amount of damages sustained, a new trial will ordinarily be granted. Hurr v. Johnston, *supra;* 5 Dunnell, Dig. (3 ed.) § 2598, and 14 Dunnell, Dig. (3 ed.) § 7141, and cases cited.

■ We come now to the question of whether the trial court committed reversible error in excluding portions of testimony offered or expressed on the part of plaintiffs' medical experts. Ordinarily the trial court has a fairly wide latitude in exercising discretion

when passing upon whether an expert may give an opinion, whether there is sufficient foundation, or whether such evidence is too speculative or conjectural and therefore improper. The test, of course, is not whether the trauma resulting from another's negligence might, only in the realm of possibility, have been a factor in producing a certain result, but whether it was a factor or at least a probable factor in producing the claimed result. Senske v. Fairmont & Waseca Canning Co. 232 Minn. 350, 45 N. W. (2d) 640; Smith v. Twin City Motor Bus Co. 228 Minn. 14, 36 N. W. (2d) 22. A recitation of past events or past history, even by an attending physician testifying as an expert, constitutes hearsay and is without foundation. It is well settled in Minnesota that mere descriptive statements of a sick or injured person as to the symptoms and effects of his injury or malady are only admissible when they have been made to a medical attendant for the purpose of medical treatment. They must, however, relate to existing pain or other symptoms from which the patient is suffering at the time and they must not relate to past transactions or symptoms, however closely these may be related to the present sickness or the present suffering from the injury. And even then such statements are only admissible when the medical attendant is called upon to give an expert opinion based in part upon them. Sund v. Chicago, R. I. & P. Ry. Co. 164 Minn. 24, 204 N. W. 628; Williams v. G. N. Ry. Co. 68 Minn. 55, 70 N. W. 860, 37 L. R. A. 199; Faltico v. Minneapolis St. Ry. Co. 198 Minn. 88, 268 N. W. 857. While the court below observed these rules quite strictly, the plaintiffs were nevertheless left free in each case to propound hypothetical questions to their medical experts to cover the accident-connected injuries and their results more adequately.

The record discloses that in the hypothetical question propounded to Ivan Berg's medical expert, Dr. McCain, no mention was made of any prior back injury, evidence of which was then in the record. The same doctor, however, did state as a part of his expert opinion that a protruding disc may reoccur without any outside force if the symptoms reappear within a six-month period from the date of a prior back injury and that the cause could then be related to the first or prior injury.

We must not overlook that the general rule which applies to expert testimony is that the ordinary function of experts is to assist the jury in reaching a correct conclusion from the facts in evidence. The opinions of experts are not ordinarily conclusive on the jury but are items of evidence to be considered by the jury along with the other evidence in the case. This court, however, has long since adopted and followed the modern tendency which is to make no distinction between evidential and ultimate facts subject to expert opinion. Piche v. Halvorson, 199 Minn. 526, 272 N. W. 591; State v. Cox, 172 Minn. 226, 215 N. W. 189.

"* * * Every expert opinion rests on an assumption of fact; if the opinion is given upon a hypothetical question, its weight depends wholly on the jury finding that the assumed facts have been proved; if it is based on the expert's own testimony as to the facts, the truth of this testimony is no less open to their belief or disbelief; and, in addition, the soundness of the opinion itself is to be determined by the jury in consideration of its apparent reasonableness or their confidence in the skill and trustworthiness of the witness, and of any contradiction from other experts." 20 Am. Jur., Evidence, § 782, p. 654.

In James v. Chicago, St. P. M. & O. Ry. Co. 218 Minn. 333, 337, 16 N. W. (2d) 188, 191, this court said:

"Even though questions as to the cause, the character, and the extent of plaintiff's injuries and as to the factors to be considered in arriving at a reasonably correct prognosis were highly scientific ones, yet, as pointed out by this court only recently: 'Under our system of jurisprudence the jury is the tribunal to which questions of this kind are submitted for determination.' Kundiger v. Metropolitan L. Ins. Co. 218 Minn. 273, 282, 15 N. W. (2d) 487, 493."

Experts are therefore under our rules permitted to give their opinions upon the very issue which the jury will have to decide, but such opinions are not conclusive. Unless a medical opinion is so positive as to exclude all doubt as to the cause under a given set of

facts, the weight of the opinion is for the jury. See, 7 Dunnell, Dig. (3 ed.) §§ 3327, 3338.

We have carefully considered the errors assigned on the trial court's rulings affecting the expert medical testimony offered and find no such error or abuse of discretion on the part of the court therein as would constitute prejudicial or reversible error. In most of the instances complained of, the question bordered on the speculative and the conjectural. In other instances it becomes clear from other or later testimony that there was a lack of foundation. We do not feel it necessary to go into these matters any further or to take up each assignment by question and answer and thus discuss them in detail.

The jury was confronted in the case of Ivan Berg with past injuries and complaints closely related in physical area, location, and kind with the alleged accident-connected injury and with the fact that only a few days were actually lost from work between the date of the injury and the time of the trial.

In the case of Loretta Maher the jury was not bound under the evidence as to her situation to conclude that the injuries received in the accident caused all the disabilities for which she was treated between the date of the accident and December 1953. It is clear from the evidence that she was treated for other conditions, such as low blood count, fever, high pulse rate, hives, and some other undisclosed ailments, which the jury could well find had no connection with the accident. Nothing was done by way of breakdown as to medical expenses or claimed loss of earnings so that the jury might have before them a reasonably clear picture or outline of what was actually due to injuries resulting from the accident and what was due to other conditions which the record discloses were unrelated to the accident. It appears from the evidence that from a physical standpoint all of the objective signs of injury cleared up within a reasonable period of time following the accident and that thereafter whatever disability she claimed was largely if not entirely subjective in nature. The burden of proving and establishing damages and their extent was equally incumbent upon the plaintiffs in each case with the burden of proving and establishing liability.

We therefore conclude that the record sustains each judgment as entered below and the court's orders denying the motions for a new trial.

Affirmed.

