## KATHERINE DERRICK v. ST. PAUL CITY RAILWAY COMPANY.

89 N. W. (2d) 629.

March 28, 1958—No. 37,230.

*David K. Wendel*, for appellant.

*Harry P. Strong, Jr.*, and *Fred A. Kueppers*, for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by Katherine Derrick against St. Paul City Railway Company for injuries sustained December 20, 1954, at about 1 p. m. when defendant's bus, in which she was a passenger, swerved and collided with a light pole and another pole in a service station adjacent to the highway. The jury returned a verdict of $4,550.23 for plaintiff. This

is an appeal from an order denying defendant's subsequent motion for judgment notwithstanding the verdict or for a new trial.

On appeal defendant contends the trial court erred in instructing the jury as follows:

"* * * When a passenger riding in a bus proves that something unusual or out of the ordinary and normal course of operations occurs, the law then imposes upon the bus company * * * the burden of proving that the unusual or abnormal operation was not caused by its negligence. Now it appears without dispute in this case that a very unusual and abnormal occurrence happened in the operation of this bus. Therefore, in this case the burden rests on the defendant to prove by a fair preponderance of the evidence that the skidding and actions of the bus, and the accident that followed, were not proximately caused by its failure to exercise the highest degree of care consistent with the practical operation of its bus."

Defendant also contends that the trial court erred in rejecting defendant's offer in evidence of certain hospital records on the ground that plaintiff's statutory privilege with reference thereto had not been waived; and in submitting to the jury questions relative to *permanent injuries* and *future consequences*.

On December 20, 1954, at about 1 p. m., plaintiff was a passenger on defendant's bus southbound on Rice Street in St. Paul. She had boarded it at the intersection of Hatch Avenue and Rice Street and the accident occurred at the intersection of Lafond Avenue and Rice Street in St. Paul. She had no knowledge as to the circumstances surrounding the accident up until the time the bus started to swerve or skid toward a light pole and another pole in an oil station adjacent to the highway. She first experienced a violent jerk to her head and neck and then arose from her seat to avoid the effect of an expected collision between the bus and the poles described. Thereafter, when the collision occurred, she was knocked to the floor of the bus, sustaining further injuries.

With reference to the accident, one witness testified that the bus started to skid shortly before it reached the intersection; that it swerved into the driveway of the adjacent oil station there and then turned around, breaking the light pole and a pole in the station; and that

thereafter it stopped, facing in the opposite direction to which it had been traveling. He testified that the street was "a little slippery"; that it was "damp and sort of wet and greasy"; and that the bus traveled about 50 feet in a skidding movement before it started to turn.

The driver testified that the streets had been wet throughout the morning; that he had made several trips over the same route that morning without difficulty; that there was nothing wrong with the brakes or with the bus either before or after the accident; that he knew the streets were wet at the time; that when he first applied the brakes he had felt the back end of the bus swerving around; that he then had stepped on the brakes but that the bus had kept on going and turned completely around, headed the opposite way when it came to a stop; and that after the accident he observed that the street paving stones "looked greasy—they looked very slippery * * * like there was oil or something on those stones * * *."

Dr. Benjamin A. Gingold, called by plaintiff, testified that plaintiff still complained of headaches and pain in her back and neck at the time he last examined her in November 1956; that in his opinion the severe pain in her lumbosacral region between the fourth and fifth vertebrae indicated that she had suffered a disc injury; that the disc injury would have a "very, very great" tendency to recur; that a healed disc is subject to irritation upon lifting or bending; that there is a basis for arthritis beneath it which recurs as it develops a fibrosis; that disc injuries are subject to recurrences because of the nature of the healing to which they are subjected; that turning, bending, or lifting in the wrong position often cause a recurrence of the injury; that after the healing period there is a weakened area which is subject to difficulty and in which a recurrence may occur; that in plaintiff the pain has remained in the region of her back and neck; and that the disabilities described were caused by the accident. On cross-examination he testified that there was no subjective evidence that there would be a recurrence of plaintiff's disc injury, his opinion that there would be being based principally upon the history and tendencies of disc injuries generally.

Plaintiff testified that at the time of trial she still suffered pain in the lower part of her back, in her hip, and in her leg down to the ankle;

that she has had recurrent headaches and can hardly move her head or neck; and that she still has almost constant and terrific pain in that area, although less severe at some times than at others.

With respect to plaintiff's claim for injuries, the trial court instructed the jury as follows:

"* * * if you find for the plaintiff you should return a verdict in her favor in an amount which will fully, fairly and adequately compensate her for the pain, suffering, disability and expense that she has incurred up to this time, and which will fully, fairly, and *adequately compensate her for any future pain and suffering which she may endure, and which you have found is reasonably certain that she will endure in the future.*" (Italics supplied.)

Plaintiff was hospitalized at Asbury Hospital in 1950 prior to the accident, at which time she was treated by Dr. Gingold for surgery, and in 1955 subsequent to the accident, at which time Dr. Gingold operated upon her for gallbladder trouble. Plaintiff subpoenaed the hospital records which related to her hospitalization resulting from the accident. Included therein were the records of plaintiff's hospitalization in 1950 and 1955. They were not offered by plaintiff, but defendant, upon ascertaining that they were present, had them marked and offered in evidence on its own behalf. The court sustained plaintiff's objection to them on the ground that they were privileged.

■ The instruction which placed upon defendant the burden of proving by a fair preponderance of the evidence that the accident was not proximately caused by defendant's failure to exercise the highest degree of care was based upon this court's opinion in Smith v. St. Paul City Ry. Co. 32 Minn. 1, 4, 18 N. W. 827, 828, wherein it was stated:

"* * * where an injury occurs to a passenger through a defect in the construction or working or management of the vehicle, or anything pertaining to the service which the carrier ought to control, a *presumption* of negligence arises. * * *

"* * * Where * * * plaintiff's own evidence shows the operation of causes beyond the control of the carrier * * * the plaintiff, in order to make out a *prima facie* case, will generally be obliged to go further and prove the actual concurrence of the negligence of the defendant as

an operating and efficient cause, or that by the exercise of due diligence the accident might have been avoided. * * *

"In the case at bar, *plaintiff's evidence* did not tend to prove that the accident was attributable to extraordinary causes beyond defendant's control. The burden, therefore, devolved upon the defendant to exonerate itself from liability by showing that the collision was due to inevitable accident, or some cause for which it was not responsible." (Italics supplied.)

■ It is clear from the principles thus expressed that, in the instant case, the trial court's instruction shifting the burden of proof to defendant would be proper only in the absence of anything in the evidence to indicate that a cause not attributable to defendant or under its control might have produced the accident. Examination of the evidence indicates that, when plaintiff rested, there was testimony of one witness to the effect that the street upon which the bus was traveling was damp, wet, and "greasy" at the intersection where the accident took place. As part of defendant's case, the bus driver testified that after the accident he had looked at the street and found that the paving stones looked "very slippery"; that "it looked like there was oil or something on those stones, and that was why I turned around"; and that he had not observed this condition previously as he was driving the bus.

It seems clear that, if a greasy or oily substance was adhering to the paving stones at the intersection where the accident occurred and that on account of the wet pavement such condition had not been noticeable by the driver in the exercise of reasonable care, at least a fact question on the issue of defendant's negligence was presented. The evidence was such that a jury might conclude that the accident was due to the greasy or oily paving stones; that this condition had not been discovered upon reasonable observation by the bus driver on account of the wet condition of the pavement; and accordingly that factors beyond the control of defendant may have caused the accident.

Under such circumstances, the burden still rested upon plaintiff to establish, by a fair preponderance of the evidence, that the accident was caused by defendant's negligence. The situation thus presented differs from that in Smith v. St. Paul City Ry. Co. *supra,* where no such factors

were present. Whether plaintiff had sustained the burden thus placed upon her was for the jury under proper instructions with reference thereto. But the instructions here definitely placed upon defendant the burden of establishing that it was free from negligence. This was error and in consequence a new trial must be ordered.

■ We do not find material error in the instructions relative to plaintiff's injuries. While there was no testimony that she was permanently injured, there was substantial opinion evidence to the effect that a disc injury such as she sustained would in all likelihood cause future difficulties and pain; and that, because of the weakened condition which usually remains in the area where such an injury occurs, there was a strong possibility of its recurrence here. There was also testimony that the arthritic condition affecting plaintiff at the time of the trial was the result of the disc injury. Based on such testimony, the trial court charged the jury that plaintiff might recover "for any future pain and suffering * * * which you have found is reasonably certain that she will endure in the future." While Dr. Gingold conceded that there was no present indication that plaintiff would suffer a recurrence of the disc injury, his opinion that there was a strong likelihood of recurrence, based upon the history of such cases generally, as well as his testimony with reference to the present arthritic condition of plaintiff, would seem sufficient to justify the instruction complained of.

It is true that, to entitle an injured claimant to damages for future disability, there must be reasonable medical certainty with reference thereto. Gau v. J. Borgerding & Co. 175 Minn. 150, 220 N. W. 412. The opinion of a medical expert based upon his examination of an injured claimant, as well as upon his knowledge of like injuries generally, to the effect that in all probability there will be a future recurrence of a present disability would seem to meet the requirement of reasonable certainty. Plaintiff's medical expert here testified that from his knowledge of disc injuries generally a disc injury such as that sustained by plaintiff would be likely to recur. While he stated on cross-examination that in any particular case, including plaintiff's, he could not say with positive certainty that there would be such a recurrence unless there was an opportunity for closer examination of the injury through surgery, nevertheless it is clear from the sum total of his testimony that he was reason-

ably certain there would be a recurrence here. See, Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793; Hiber v. City of St. Paul, 219 Minn. 87, 16 N. W. (2d) 878. This would seem to meet the required test of certainty.

■ Defendant argues that, since Dr. Gingold testified that he had reviewed the hospital records, as well as his office notes, and had discussed with plaintiff her history prior and subsequent to the accident, it must follow that his opinions in part were based upon his knowledge of plaintiff's condition and her history both prior and subsequent to the accident as obtained from such hospital records; and that hence they should have been received in evidence with the records of her hospitalization as a result of the accident. When Dr. Gingold was asked hypothetical questions calling for his opinion as to plaintiff's injuries, however, the foundation upon which he was permitted to base such opinion was limited by the court to plaintiff's history taken with respect to the accident and to his diagnosis of the injuries which she sustained as a result thereof. The instructions thus limiting him were as follows:

"Court: * * * He [Dr. Gingold] will be limited to the history he has testified to. The complaints she was suffering from, and the fact she had been in an accident. It is obvious the Doctor has treated her before, and you are not asking an opinion based on that, are you?

"Mr. Strong [counsel for plaintiff]: No, I am not. I am asking the Doctor's opinion only from the—covering this period of time from the time of the accident subsequent.

* * * * *

"Mr. Wendel [counsel for defendant]: I move that any history the Doctor takes into consideration in answering his question be limited to that elicited here on his examination.

"Court: That should be understood, Doctor. The history referred to is the complaints of pain and suffering she made when you first saw her [after the accident]."

In response to questions thereafter, the doctor stated:

"I have limited them [his answers] to only the things pertaining to this accident."

It is clear from the foregoing recitation that Dr. Gingold's testimony and opinions were based entirely upon the hospital records and notes kept by him as they related to the accident and that plaintiff at no time waived her privilege with respect to the other hospital records so as to render them admissible.

The order appealed from is reversed and a new trial granted.