## STATE v. JOHN ERNEST McCARTHY.

104 N. W. (2d) 673.

August 19, 1960—No. 37,986.

*William T. Johnson,* for appellant.

*Walter F. Mondale,* Attorney General, *Henry H. Feikema,* Special Assistant Attorney General, and *John F. Thoreen,* County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from a judgment entered upon a jury's verdict, convicting defendant of driving an automobile while under the influence of an alcoholic beverage in violation of Minn. St. 169.121, subd. 1.

Defendant was arrested by a state highway officer in Washington County on May 18, 1959, shortly after midnight because of the speed at which he was driving, and the manner in which he drove over the centerline of the highway. After his arrest, because the arresting officer smelled intoxicants upon him, defendant was taken to the sheriff's office at Stillwater, where he was questioned by the arresting officer and also examined by Dr. Henry Van Meier, medical officer for Washington County, to determine whether he was intoxicated. At that time, he refused to submit to a urinalysis to show alcoholic content of his blood.

At the trial, during examination of the arresting officer, the following took place:

"Q. [By Mr. John F. Thoreen, county attorney]: Was there a urine analysis test made of the defendant?

"A. No, there was not.

"Q. Was there a request made of the defendant to have such a test made?

"A. Yes.

"Mr. Johnson [counsel for defendant]: Just a moment. I'm going to object to that question on the ground and on the point of moving for a mistrial because he knows the defendant does not have to testify against himself. That question is uncalled for and entirely improper and should never have been made.

"The Court: Well, the objection will be sustained, and the jury will be instructed to disregard the question and the answer that he made.

"Mr. Johnson: The defendant at this time will move for a mistrial.

"The Court: Well, that will be denied."

In his testimony Dr. Van Meier was asked if he had an opinion as to whether defendant was intoxicated immediately after his arrest. Before answering and upon cross-examination by defendant's counsel, he testified that prior to trial his recollection as to defendant's condition at the time of his arrest had been refreshed by reference to notes which he had taken during his examination of defendant. Counsel for defendant thereupon objected to the foundation for his opinion on the ground that it would be in violation of § 611.033, which provides:

"No *statement,* confession, or admission in writing shall be received in evidence in any criminal proceeding against any defendant unless at the time of the taking thereof such defendant shall have been furnished with a copy thereof and which statement, confession, or admission shall have endorsed thereon or attached thereto the receipt of the accused which shall state that a copy thereof has been received by him." (Italics supplied.)

At that time the court sustained this objection, but subsequently the following proceedings with reference to this witness occurred:

By Mr. Thoreen:

"Q. * * * do you have an opinion, Doctor, and did you have an opinion at the time that you examined the defendant on May 18, 1959, as to whether or not he was under the influence of an alcoholic beverage?

* * * * *

"A. At the conclusion of my examination, I have an opinion.

"Q. What is your opinion?

"A. That he was under the influence of alcohol.

"Q. To what extent, Doctor, relating to his ability to drive an automobile?

"A. To the extent that it is my opinion that he, by virtue of the alcohol which he had consumed, was unable to consistently apply himself to the satisfactory performance of the task in which he was engaged:

"Mr. Johnson: If the Court please, I'll move that that answer be stricken as purely within the purview or the province of the jury to determine. He can give an opinion as to the extent of his intoxication, but not as to his ability to drive a car. That's up to the jury to determine.

"The Court: Well, I'm going to let the answer stand. The objection will be overruled."

By Mr. Johnson:

"Q. Doctor, in rendering your opinion now that the defendant was under the influence of intoxicating liquor at the time that you examined him * * * it was also based on the conversations that you had with the defendant at that time, is that not correct?

"A. Mr. Johnson, I had no conversation with the defendant. Every question I asked him was a part of the examination.

"Q. Let me put it this way, Doctor: Besides the physical tests * * * did you give him other tests such as question-and-answer tests upon which you rely in making this opinion?

"A. Yes, sir.

"Q. You did rely upon these other parts of the examination which consisted of questions and answers, is that correct?

"A. Questions and answers and observations.

"Mr. Johnson: We move the doctor's testimony be stricken on the

grounds that there is not a proper foundation for it, and also the Court has sustained the objection to striking part of it.

\* \* \* \* \*

"The Court: That motion will be denied."

Subsequent to the verdict, the court imposed sentence upon defendant as follows:

"The Court: Well, you, John Ernest McCarthy, having been convicted by a jury trial of the crime of driving while under the influence of an alcoholic beverage, as charged in the complaint before this Court, and therefore standing convicted of that crime as punishment therefor it is the sentence of the law and the judgment of this Court that you shall be committed to the County Jail of Washington County for a term of fifty days; provided, however, that this sentence will be suspended and you will be placed on probation to and under the Sheriff of Washington County for a period of six months, upon the condition that you shall remain law-abiding and of good behavior, *and upon the further condition that within a period of thirty days you shall reimburse Washington County for its expenditures for the twelve jurors who have served on this case for two days, amounting to $196.80, and reimburse Washington County for the bailiffs' services rendered during the trial of this case, amounting to $48.00, and that you shall reimburse the Municipal Court for the Court costs that were taxed in the amount of $31.75; and it is further ordered that if within thirty days you shall make these reimbursements, your sentence to the County Jail for fifty days will be indefinitely suspended."* (Italics supplied.)

On appeal defendant contends that the court erred (1) in denying his motion for mistrial on the ground that the arresting officer had testified that defendant had been requested to submit to a urinalysis, and that no such test had been made; (2) in overruling objection to Dr. Van Meier's opinion as to defendant's intoxication on the ground that the foundation upon which it was based was inadmissible; and (3) in permitting Dr. Van Meier to express the opinion that defendant was so intoxicated as to be unable to properly drive an automobile. Defendant also contends that the conditions imposed for suspension of sentence

were in violation of his constitutional rights and in excess of the court's authority under § 631.48.

■ Under § 169.121, subd. 2,[1] which authorizes admission of evidence as to alcoholic content of a defendant's blood as determined by urinalysis or other tests made within two hours of his arrest for driving while under the influence of an alcoholic beverage, it is clear that any such tests made must have been *voluntary* on the part of defendant. By implication it is obvious from § 169.121 that such evidence would be inadmissible where no voluntary test is involved. Would not evidence of defendant's refusal to take such a test be equally inadmissible?

■ Minn. Const. art. 1, § 7, provides that:

"No person shall be * * * compelled in any criminal case to be a witness against himself, * * *."

Minn. St. 611.11 provides that a defendant's "failure to testify shall not create any presumption against him, nor shall it be alluded to by the prosecuting attorney or by the court."

Based upon these provisions and safeguards, we must conclude that the trial court erred in submitting the case to the jury after it had heard testimony that defendant had been requested to submit to a urinalysis, and that no such test had been made. The clear implication of such testimony was that defendant had refused to submit to the test. There is little doubt but that such evidence in all probability strongly influenced the jury in its decision notwithstanding the court's instruction that the jury should disregard it. See, McKnight v. City of Duluth, 181 Minn. 450, 232 N. W. 795; Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582; Foster v. Butler, 207 Minn. 286, 291 N. W. 505.

■ This exact question has not been presented here prior hereto.

---

[1]Minn. St. 169.121, subd. 2, provides in part: "Upon the trial of any prosecution arising out of acts alleged to have been committed by any person arrested for driving, operating, or in actual physical control of a motor vehicle while under the influence of an alcoholic beverage, the court may admit evidence of the amount of alcohol in the person's blood *taken voluntarily* within two hours of the time of the offense as shown by a medical or chemical analysis of his breath, blood, urine or saliva." (Italics supplied.)

In State v. Simonsen, 252 Minn. 315, 325, 89 N. W. (2d) 910, 917, we upheld a Minneapolis ordinance which provided that "The refusal of the defendant to permit a chemical analysis to be made of his blood, breath, urine, or other bodily substance at the time of his arrest shall not be admissible in evidence against him upon trial." While this latter provision is not part of § 169.121, we feel that under § 611.11, which forbids allusion by the prosecuting attorney to a defendant's failure to testify, the principle governing the Simonsen case must be applied here. The reasoning therefor is well expressed in State v. Severson (N. D.) 75 N. W. (2d) 316, cited with approval in State v. Simonsen, *supra*, where a like viewpoint was adopted in construing North Dakota Rev. Code 1943, 1953 Supp. § 39-0801, which provided that testimony might be received as to results of chemical tests showing concentration of alcohol in the blood at the time of arrest, but also provided that no defendant shall be required to submit to such test. There the court stated (75 N. W. [2d] 318):

"* * * We are of the opinion * * * that when the legislature granted an accused person a choice of whether he would submit to such a test, it intended that the choice should be absolutely free and not encumbered by a liability. If the fact that an accused person chooses not to take a test can be put in evidence and argued to the jury as evidence of guilt, then the statute places the defendant in a position where willy-nilly, he must risk providing evidence for the prosecution by submitting to a test or certainly provide it by refusing to take one, although his reason for refusal may have no relation to the question of guilt or innocence."

See, also, People v. Stratton, 286 App. Div. 323, 143 N. Y. S. (2d) 362; Jordan v. State, 163 Tex. Cr. 287, 290 S. W. (2d) 666; Duckworth v. State (Okl. Cr.) 309 P. (2d) 1103. Contra, State v. Bock, 80 Idaho 296, 328 P. (2d) 1065, where statute provided that, by operating motor vehicle within state, driver was deemed to have consented to chemical tests. Decisions of the California (People v. McGinnis, 123 Cal. App. [2d] Supp. 945, 267 P. [2d] 458), Ohio (State v. Gatton, 60 Ohio App. 192, 20 N. E. [2d] 265), Iowa (State v. Benson, 230 Iowa 1168, 300 N. W. 275), South Carolina (State v. Smith, 230 S. C.

164, 94 S. E. [2d] 886), and Virginia courts (Gardner v. Commonwealth, 195 Va. 945, 81 S. E. [2d] 614) do not involve statutes extending defendant right to refuse tests. 44 Minn. L. Rev. 704. Based upon our constitutional and statutory restrictions as above set forth and conscious that the tests specified by § 169.121 must be voluntary, we conclude that the admission of the evidence described constituted reversible error.

■   Defendant contends that the court should have stricken the opinion of Dr. Van Meier as to defendant's intoxication because it was based upon reference to notes containing statements made by defendant, copies of which had not been furnished him as required by § 611.033. After objection to his opinion had been sustained, the witness was then instructed not to base it upon reference to any statements made by defendant. He then detailed the manner in which defendant had been examined. He recited that tests given included both physical and mental responses—tests for articulation; tests for walking a straight line; tests for coordination and balance; finger-to-nose test; and finger-to-finger test. Based upon such foundation, he then expressed the opinion that defendant was under the influence of alcohol at the time of the examination. No objection to the foundation described was then made. Subsequently, during cross-examination, he was asked if, notwithstanding the tests described, he had not also relied upon question-and-answer tests. He replied "Question and answer and observation." Apparently this had reference to the tests for articulation which required oral responses and which the witness had detailed without objection in establishing the foundation. There is nothing to indicate that such answers involved statements made by defendant which would have an adverse effect upon him as contemplated by § 611.033, and without construing the general purpose or effect of this section, we hold the court's refusal to strike the opinion did not constitute error.

■   Likewise, we feel that it was not error for the court to permit Dr. Van Meier to express the opinion that defendant was intoxicated to the extent that he was not able to consistently apply himself satisfactorily to the task at hand. We have held that the reception of opinion evidence on ultimate issues rests largely in the discretion of the trial court. In re Estate of Olson, 176 Minn. 360, 223 N. W. 677;

Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 47 N. W. (2d) 180; Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133; Van House v. Canadian Northern Ry. Co. 155 Minn. 57, 192 N. W. 493, 28 A. L. R. 357; Derrick v. St. Paul City Ry. Co. 252 Minn. 102, 89 N. W. (2d) 629.

In Commonwealth v. Capalbo, 308 Mass. 376, 380, 32 N. E. (2d) 225, 228, with reference to the testimony of an expert that the amount of alcohol found in the deceased in that case would cause intoxication to the extent of causing unsteadiness of motion, the court stated:

"* * * The effect that a specified amount of alcohol found in a man's organs and bodily fluids would have upon the steadiness of his gait was a proper subject for expert testimony." Citing State v. Duguid, 50 Ariz. 276, 72 P. (2d) 435; Kuroske v. Aetna Life Ins. Co. 234 Wis. 394, 291 N. W. 384, 127 A. L. R. 1505.

Based upon such authorities, we hold that it was within the discretion of the trial court to permit the medical expert to express the opinion based upon his examination that defendant was intoxicated to the extent of being unable to satisfactorily perform the tasks at hand.

■ There remains for determination the question of whether the court was authorized, as a condition for suspension of sentence, to require that defendant reimburse Washington County for its expenditures for the 12 jurors who had served in the case. Section 631.48 specifies that in criminal actions, in addition to the punishment and as part of the sentence, the court may adjudge that a defendant pay the "disbursements of the prosecution." In construing this section in State v. Morehart, 149 Minn. 432, 183 N. W. 960, the court held that the "disbursements of the prosecution" did not include jury fees or expenses. Likewise, in Gleckman v. United States (8 Cir.) 80 F. (2d) 394, it was held that jury fees, mileage, and like items were not chargeable to an accused as costs of prosecution under Federal statutes in the absence of a Minnesota statute to such effect.

It is urged, however, that under § 610.38, which empowers the courts to suspend sentences under such terms and conditions as are suitable, the court may require payment of jury fees as a condition for suspension of sentences. See, State v. Chandler, 158 Minn. 447, 197 N.

W. 847. It would appear that §§ 631.48 and 610.38, both of which relate to the sentencing of defendants in criminal actions, are in pari materia. State ex rel. Carlton v. Weed, 208 Minn. 342, 294 N. W. 370. In construing such statutes, each should be considered with reference to the other to carry into effect the intention of the legislature that one consistent policy should govern the subject matter involved. Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254; Foley v. Whelan, 219 Minn. 209, 17 N. W. (2d) 367. It would follow that, since § 631.48 governs the power of the court to effect payment of prosecution costs from a defendant, and since this court has held that no authorization for collection of jury fees or expenses is contained therein, in the interest of consistency § 610.38 should not be construed to bring about an opposite result. It would follow that here the trial court exceeded its authority in requiring, as a condition of suspension of sentence, the payment by defendant of the jury fees involved.

Reversed and new trial granted.

Dell, Chief Justice (dissenting).

In my opinion the judgment of conviction and sentence should be affirmed.

For the reasons stated in the majority opinion, the testimony alluding to the defendant's refusal to take a urinalysis test was inadmissible. However, the error was promptly corrected by the trial court in immediately instructing the jury to disregard the question and answer pursuant to the objection made. A new trial should not ordinarily be granted for the erroneous admission of evidence where the jury is clearly and distinctly instructed to disregard it. See, e. g., Zuber v. N. P. Ry. Co. 246 Minn. 157, 176, 74 N. W. (2d) 641, 655. In almost every lawsuit errors in the admission of evidence occur and "when the trial judge does all that can be done to correct the error, this court should be slow to order a retrial." State v. Watzek, 158 Minn. 351, 353, 197 N. W. 669, 670. There are occasionally situations where the prejudicial effect of erroneously admitted evidence is so great that the error cannot be sufficiently cured by instructions to the jury. See, 14 Dunnell, Dig. (3 ed.) § 7207. But as Mr. Justice Holt said in Town of Wells v. Sullivan, 125 Minn. 353, 356, 147 N. W. 244, 245:

"* * * No one familiar with the trial of law suits will contend that a verdict must be overturned whenever it is made to appear that objectionable testimony found temporary lodgment, although the jury were promptly instructed to disregard the same as soon as the error was perceived by the court. Ordinarily it is to be presumed that the jury is able to heed such instructions and that no prejudice follows. Were the rule otherwise few verdicts could ever stand, and trials would become a mockery."

It is exceedingly doubtful that the testimony here involved was of such a highly prejudicial nature that the court's instruction did not cure it. But assuming that it was, the defendant, having failed to make timely objection to the testimony, is in no position to assert this argument. The objectionable character of the evidence was clearly foreseeable, not only from the question asked but also from the preceding question and answer. The defendant does not contend, nor does the record show, that the question was answered too quickly to permit timely objection. Under such circumstances it was incumbent upon the defendant to interpose his objection before the question was answered and the damaging testimony given to the jury. McCormick, Evidence, § 52; 1 Wigmore, Evidence (3 ed.) § 18. Since the prejudice, if any, resulted from the defendant's belated objection, it is not a sufficient basis for granting a new trial.

I also disagree with the conclusion reached by the majority that the trial court exceeded its authority in suspending the defendant's sentence upon condition that he pay the jury fees amounting to $196.80. Unlike punishment imposed by sentence, there is no obligation on the part of a defendant to accept the conditions of suspension. If he feels the conditions of suspension to be onerous, he can simply reject the offer. Minn. St. 631.48 and 610.38 are not, in my opinion, in pari materia. Frequently courts impose "terms and conditions of probation" to the suspension of a sentence that would not be authorized if they were a part of the sentence itself. It seems obvious that if the court's power to impose "terms and conditions" is to be limited to authorized sentences, § 610.38 becomes meaningless.

In addition to the expert testimony of intoxication, the evidence

showed that the defendant was driving his car at an excessive speed and in an erratic manner; that when he stopped his car in response to the officer's signal he hit the guardrail, damaging the paint on the fender; that he was unsteady in walking; that there was a strong odor of alcohol on his breath; that his face was flushed, his eyes bloodshot, and his speech slurred and rambling. This evidence is clearly adequate to sustain the conviction and, in the absence of prejudicial error, a new trial is not warranted.